# Nos. 15-5114 & 15-5115

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

JOSEPH P. NACCHIO and ANNE M. ESKER,

Plaintiffs–Cross-Appellants

v.

UNITED STATES,

Defendant–Appellant

## ON APPEALS FROM THE JUDGMENT OF THE
## UNITED STATES COURT OF FEDERAL CLAIMS
### No. 12-20; Judge Mary Ellen Coster Williams

## OPENING BRIEF FOR THE UNITED STATES

CAROLINE D. CIRAOLO
  *Acting Assistant Attorney General*

DIANA L. ERBSEN
  *Deputy Assistant Attorney General*

GILBERT S. ROTHENBERG          (202) 514-3361
RICHARD FARBER                 (202) 514-2959
JACOB EARL CHRISTENSEN         (202) 307-0878
  *Attorneys, Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*September 15, 2015*

# TABLE OF CONTENTS

**Page**

Table of contents ..................................................................................i

Table of authorities .............................................................................iv

Glossary ...............................................................................................xii

Statement of related cases ...............................................................xiii

Jurisdictional statement ......................................................................1

Statement of the issues .......................................................................3

Statement of the case ..........................................................................4

    A.    Nacchio's insider trading conviction ............................6

    B.    Nacchio's tax refund claim ..........................................11

    C.    The proceedings in the Court of Federal Claims .........12

        1.    The summary judgment proceedings .................12

        2.    The Court of Federal Claims' opinion ...............15

        3.    The stipulated judgment ....................................18

Summary of argument ......................................................................18

Argument ...........................................................................................23

    I.    The Court of Federal Claims erred as a matter of law
        in holding that Nacchio was entitled to a tax deduction
        for the proceeds from his illegal stock sales that he
        forfeited to the United States as part of the sentence in
        his criminal case for insider trading ...................................23

        Standard of review ..............................................................23

        A.    Introduction:  The limitation on deductibility
            imposed by the "frustration of public policy"
            doctrine ......................................................................24

        B.    The codification of the "frustration of public
            policy" doctrine in § 162(f) ...........................................28

C.    The Court of Federal Claims erred in holding that a tax deduction for Nacchio's criminal forfeiture payment was not barred by § 162(f) and the public policy grounds underlying that provision .........31

1.    Nacchio's criminal forfeiture was a "fine or similar penalty" within the meaning of § 162(f) .................................................................32

a.    Nacchio's criminal forfeiture was a "fine or similar penalty" as that phrase is defined in the Treasury Regulations .................................................32

b.    Nacchio's criminal forfeiture was a mandatory punishment for his insider trading crimes ...........................................37

c.    The Second Circuit's decision in *Stephens* is inapposite................................41

2.    The Attorney General's subsequent exercise of his discretionary authority to grant remission to victims of Nacchio's crimes did not alter the character of Nacchio's criminal forfeiture as a "fine or similar penalty" under § 162(f) ......................................................44

II.    The Court of Federal Claims also erred as a matter of law in holding that Nacchio's conviction for insider trading did not collaterally estop him from seeking to establish that he qualifies for the special tax relief afforded by § 1341 .................................................48

Standard of review .............................................................48

A.    The Court of Federal Claims erred by failing to give preclusive effect to the jury's determination that Nacchio "willfully" committed securities fraud .........................................................................52

1.    The jury was required to determine Nacchio's state of mind at the time of the fraudulent stock sales in order to convict him of securities fraud ........................................ 53

2.    It was not necessary that the jury's adjudication of Nacchio's state of mind be based on, or be informed by, Nacchio's own trial testimony or confession of guilt .................. 60

B.    The Court of Federal Claims improperly distinguished this Court's decision in *Culley* .............. 64

Conclusion ............................................................... 68
Statutory and regulatory addendum .................................... 69
Certificate of service ................................................ 75
Certificate of compliance ............................................ 76

# TABLE OF AUTHORITIES

**Cases:**                                                    **Page(s)**

*Aaron v. SEC,*
  446 U.S. 680 (1980) .............................................................. 56, 57, 67

*Adolf Meller Co. v. United States,*
  600 F.2d 1360 (1979) ................................................................ 36, 46

*Amstar Corp. v. Southern Pac. Transport Co.,*
  607 F.2d 1100 (5th Cir. 1979) ...........................................................5

*Anderson v. Janovich,*
  543 F. Supp. 1124 (W.D. Wash. 1982) ..........................................64

*Appalachian Regional Healthcare, Inc. v. United States,*
  999 F.2d 1573 (Fed. Cir. 1993).........................................................5

*Bailey v. Commissioner,*
  756 F.2d 44 (6th Cir. 1985) ...........................................................46

*Bailey v. Commissioner,*
  T.C. Memo 1989-674 .....................................................................27

*BIW Deceived v. Local S6,*
  132 F.3d 824 (1st Cir. 1997)..............................................................5

*Bryan v. United States,*
  524 U.S. 184 (1998) ........................................................................56

*Caldera v. Northrop Worldwide Aircraft Svs., Inc.,*
  192 F.3d 962 (Fed. Cir. 1999)..........................................................58

*Colt Indus., Inc. v. United States,*
  880 F.2d 1311 (Fed. Cir. 1989)................................ 20, 29, 35, 36, 37

*Commissioner v. Heininger,*
  320 U.S. 467 (1943) ........................................................................24

*Commissioner v. Tellier,*
  383 U.S. 687 (1966) ........................................................................25

*Culley v. United States,*
  222 F.3d 1331 (Fed. Cir. 2000)......................... 13, 14, 17, 21, 22, 23
                                49, 50, 51, 64–67

*Davis v. Commissioner,*
  17 T.C. 549 (1951) .........................................................................27

*Desert Palace, Inc. v. Costa,*
  539 U.S. 90 (2003) .........................................................................61

**Cases (continued):**                                    **Page(s)**

*Dorse v. Armstrong World Indus., Inc.*,
  798 F.2d 1372 (11th Cir. 1986) ........................................5
*Downey v. State Farm Fire & Cas. Co.*,
  266 F.3d 675 (7th Cir. 2001) ...........................................5
*Emich Motors Corp. v. General Motors Corp.*,
  340 U.S. 558 (1951) ......................................... 52, 53, 57, 66
*Fuller v. Commissioner*,
  213 F.2d 102 (10th Cir. 1954) ........................................27
*Gonzales v. Carhart*,
  550 U.S. 124 (2007) ........................................................54
*Greenhouse v. Greco*,
  544 F.2d 1302 (5th Cir. 1977) .........................................5
*Hackworth v. Commissioner*,
  T.C. Memo 2004-173 .....................................................27
*Holland v. United States*,
  348 U.S. 121 (1954) .......................................................62
*Holt v. Commissioner*,
  69 T.C. 75 (1977) ...........................................................27
*Hopka v. United States*,
  195 F. Supp. 474 (N.D. Iowa 1961) ..............................27
*In re Brown*,
  427 B.R. 715 (D. Minn. 2010) .......................................64
*In re Matter of $67,470*,
  901 F.2d 1540 (11th Cir. 1990) .....................................44
*James v. United States*,
  366 U.S. 213 (1961) .................................................31, 49
*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
  458 F.3d 244 (3d Cir. 2006)...........................................49
*Jerry Rossman Corp. v. Commissioner*,
  175 F.2d 711 (2d Cir. 1949) ..........................................25
*Keefe v. Prudential Prop. & Cas. Co.*,
  203 F.3d 218 (3d Cir. 2000)............................................5
*King v. United States*,
  152 F.3d 1200 (9th Cir. 1998) .......................................27
*Kraft v. United States*,
  991 F.2d 292 (6th Cir. 1993) .........................................50

## Cases (continued): Page(s)

*Libretti v. United States,*
  516 U.S. 29 (1995) ...................................................... 38, 40

*McKinney v. United States,*
  574 F.2d 1240 (5th Cir. 1978) ..................................... 50

*Medeiros v. Commissioner,*
  77 T.C. 1255 (1981) .................................................. 30, 32

*Middle Atlantic Distributors v. Commissioner,*
  72 T.C. 1136 (1979) .................................................. 46

*Morissette v. United States,*
  342 U.S. 246 (1952) ........................................ 53, 54, 57

*Murillo v. Commissioner,*
  T.C. Memo 1998-13 ................................................... 27

*Rogers v. Missouri Pac. R. Co.,*
  352 U.S. 500 (1957) .................................................. 61

*Rust Communications Group, Inc. v. United States,*
  20 Cl. Ct. 392 (1990)................................................ 30

*Samirah v. Sabhnani,*
  772 F. Supp. 2d 437 (E.D.N.Y. 2011) ............................. 64

*SEC v. Grossman,*
  887 F. Supp. 649 (S.D.N.Y. 1995) ................................ 64

*Shell Petroleum v. United States,*
  319 F.3d 1334 (Fed. Cir. 2003)..................................... 48

*Slaven v. American Trading Transp. Co., Inc.,*
  146 F.3d 1066 (9th Cir. 1998) ..................................... 5

*Smith v. California,*
  361 U.S. 147 (1959) .................................................. 53

*State Farm Fire & Cas. Co. v. Fullerton,*
  118 F.3d 374 (5th Cir. 1997) .................................... 65, 66

*Stephens v. Commissioner,*
  905 F.2d 667 (2d Cir. 1990)................... 20, 29, 30, 32, 41, 42, 44

*Stewart v. Bader,*
  907 A.2d 931 (N.H. 2006) ........................................... 64

*Southern Pac. Trust. Co. v. Commissioner,*
  75 T.C. 497 (1980) ................................................... 37

*Talley Indus. Inc. v. Commissioner,*
  116 F.3d 382 (9th Cir. 1997) ..................................... 37

## Cases (continued): Page(s)

*Tank Truck Rentals, Inc. v. Commissioner,*
   356 U.S. 30 (1958) .............................................................. 13, 24, 25
*Taylor v. Sturgell,*
   553 U.S. 880 (2008) ........................................................................ 52
*Therasense, Inc. v. Becton, Dickinson and Co.,*
   649 F.3d 1276 (Fed. Cir. 2011) ...................................................... 61
*Typeright Keyboard Corp. v. Microsoft Corp.,*
   374 F.3d 1151 (Fed. Cir. 2004) ........................................................ 3
*United States v. Alamoudi,*
   452 F.3d 310 (4th Cir. 2006) .......................................................... 40
*United States v. Algemene Kunstzijde Unie N.V.,*
   226 F.2d 115 (4th Cir. 1955) .................................................... 26, 27
*United States v. Bajakajian,*
   524 U.S. 321 (1998) ............................................. 35, 38, 39, 40, 47
*United States v. Blackman,*
   746 F.3d 137 (4th Cir. 2014) .................................................. 38, 40, 42
*United States v. Casey,*
   444 F.3d 1071 (9th Cir. 2006) ........................................................ 43
*United States v. Contorinis,*
   692 F.3d 136 (2d Cir. 2012) ...................................................... 39, 40
*United States v. Correll,*
   389 U.S. 299 (1967) ........................................................................ 36
*United States v. Joseph,*
   743 F.3d 1350 (11th Cir. 2014) ................................................. 40, 42
*United States v. Lavin,*
   942 F.2d 177 (3d Cir. 1991) ........................................................... 45
*United States v. McGinty,*
   610 F.3d 1242 (10th Cir. 2010) ...................................................... 43
*United States v. Nacchio,*
   2007 WL 2221437 (D. Colo. 2007) ................................................ 40
*United States v. Nacchio,*
   519 F.3d 1140 (10th Cir. 2008) .............................................. 8, 59, 62
*United States v. Nacchio,*
   555 F.3d 1234 (10th Cir. 2009) .................................................. 8, 60
*United States v. Nacchio,*
   573 F.3d 1062 (10th Cir. 2009) .................................................. 8, 43

## Cases (continued):                                    Page(s)

*United States v. Newman,*
    659 F.3d 1235 (9th Cir. 2011) .................................. 34, 38, 40, 42, 43
*United States v. O'Hagan,*
    521 U.S. 642 (1997) ......................................................... 55, 56, 67
*United States v. Padron,*
    527 F.3d 1156 (11th Cir. 2008) ....................................................... 34
*United States v. Razmilovic,*
    419 F.3d 134 (2d Cir. 2005) ..................................................... 34, 40
*United States v. Shefton,*
    548 F.3d 1360 (11th Cir. 2008) ..................................................... 45
*United States v. Smallwood,*
    443 F.2d 535 (8th Cir. 1971) ......................................................... 61
*United States v. Taylor,*
    582 F.3d 558 (5th Cir. 2009) ................................................... 40, 43
*United States v. Torres,*
    703 F.3d 194 (2d Cir. 2012) .......................................................... 43
*United States v. Vampire Nation,*
    451 F.3d 189 (3d Cir. 2006) .......................................................... 34
*United States v. Venturella,*
    585 F.3d 1013 (7th Cir. 2009) ................................................. 40, 43
*United States v. Webber,*
    536 F.3d 584 (7th Cir. 2008) ......................................................... 42
*United States v. Wenger,*
    427 F.3d 840 (10th Cir. 2005) ....................................................... 62
*Various Items of Personal Property v. United States,*
    282 U.S. 577 (1931) ...................................................................... 38
*Vereda v. United States,*
    271 F.3d 1367 (Fed. Cir. 2001) ..................................................... 38
*Wang v. Commissioner,*
    76 T.C. Memo 1998-389 ................................................................ 67
*Wood v. United States,*
    863 F.2d 417 (5th Cir. 1989) ......................................................... 26
*York Prod., Inc. v. Central Tractor Farm,*
    99 F.3d 1568 (Fed. Cir. 1996) ......................................................... 5

**Statutes:**                                                                                         **Page(s)**

15 U.S.C.:
   § 78ff ....................................................................... 6, 52, 54
   § 78ff(a) .............................................................. 35, 55, 56
   § 78j ............................................................................. 6, 54
   § 78j(b) ........................................................ 55, 56, 57, 62

18 U.S.C.:
   § 981 .................................................................... 33, 34, 39
   § 981(a)(1)(C) ........................................................ 7, 33, 40
   § 981(a)(2)(A) ................................................................. 8
   § 981(a)(2)(B) ........................................................... 8, 43
   § 981(e) ........................................................................ 45
   § 982 .............................................................................. 39
   § 1956(c)(7) .................................................................. 34
   § 1956(c)(7)(A) ............................................................. 33
   § 3554 .................................................................. 34, 34, 44

21 U.S.C.:
   § 853 .............................................................................. 34
   § 853(a) ........................................................................ 44
   § 853(i) .................................................................... 44, 45

26 U.S.C. (Internal Revenue Code):
   § 61 ............................................................................... 49
   § 162 ......................................... 12, 13, 14, 15, 19, 28, 29, 32, 69
   § 162(a) .................................................................. 28, 30
   § 162(c) ........................................................................ 28
   § 162(f) ............................... 13, 14, 15, 19, 20, 21, 29, 30, 31
                                            32, 35, 36, 37, 38, 41, 42, 44, 46
   § 162(g) ........................................................................ 29
   § 165 .................... 3, 12, 13, 14, 15, 19, 28, 29, 30, 31, 32, 41, 47, 69
   § 165(a) ................................................................... 24, 30
   § 165(c) ........................................................................ 24
   § 165(c)(2) .................................................................... 15
   § 1341 .................. 2, 4, 11, 12, 16, 17, 18, 21, 48, 49, 50, 51, 67, 70
   § 1341(a)(1) ........................................... 5, 13, 21, 48, 49

**Statutes (continued):** Page(s)

§ 6511(a) ..............................................................................2
§ 6532(a) ..............................................................................2
§ 7422(a) ..............................................................................2

28 U.S.C.:
§ 1295(a)(3) .........................................................................2
§ 1491(a)(1) .........................................................................2
§ 2107(b) ..............................................................................2
§ 2461(c)...................................... 7, 33, 34, 39, 40, 44, 71

42 U.S.C.:
§ 10601(d)(4)(A) ...............................................................47
§ 10602..............................................................................47

Civil Asset Forfeiture Reform Act of 2000,
Pub. L. No. 106-185, 114 Stat. 202 ...................................33

Securities Exchange Act of 1934,
Pub. L. No. 73-291, 48 Stat. 881 .................................27, 55

Tax Reform Act of 1969,
Pub. L. No. 91-172, 83 Stat. 487 .......................................28

**Regulations:**

17 C.F.R.:
§ 240.10b-5...................................................................6, 55, 56
§ 240.10b5-1......................................................................6, 55

26 C.F.R. (Treasury Regulations):
§ 1.165-1(a) ......................................................................30
§ 1.162-21(b)(1)(i) ..................................................32, 35, 72
§ 1.162-21(b)(1)(ii) .......................................................36, 72
§ 1.162-21(b)(1)(iii) ......................................................36, 72

**Regulations (continued):**                                    **Page(s)**

28 C.F.R.:
  § 9.1 ....................................................................... 10
  § 9.1(b)(2) ............................................................. 46
  § 9.4(e) .................................................................. 45
  § 9.8 ....................................................................... 44
  § 9.8(a)(1) ............................................................. 45

## Rules:

Federal Rules of Criminal Procedure
  Rule 32.2 ................................................................ 6

## Miscellaneous:

C. Torcia Wharton's Criminal Law § 27 (15th ed. 1993) ................... 54

H.R. Conf. Rep. No. 91-782 (1969) ....................................... 29

Jonathan C. Thau, *Collateral Estoppel and the Reliability of
  Criminal Determinations*, 70 Geo. L. J. 1079 (1982) ................... 66

Restatement (Second) of Judgements § 85 ................................ 52, 66

Revenue Ruling 77-126, 1977-1 C.B. 47 (1977) .......................... 29

S. Rep. No. 91-552 (1969) ............................................... 28, 29

# GLOSSARY

| | |
|---|---|
| Code | Internal Revenue Code (26 U.S.C.) |
| I.R.C. | Internal Revenue Code (26 U.S.C.) |
| IRS | Internal Revenue Service |
| Treas. Reg. | Treasury Regulations (26 C.F.R.) |
| Qwest | Qwest Communications International, Inc. |

## STATEMENT OF RELATED CASES

Pursuant to Local Rule 47.5, counsel for the United States state that this case has not previously been before this Court or any other appellate court and that they are aware of no other cases pending in this Court or elsewhere that will directly affect or be directly affected by this Court's decision in this appeal.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

————————

Nos. 15-5114 & 15-5115

JOSEPH P. NACCHIO and ANNE M. ESKER,

Plaintiffs–Cross-Appellants

v.

UNITED STATES,

Defendant–Appellant

————————

ON APPEALS FROM THE JUDGMENT OF THE
UNITED STATES COURT OF FEDERAL CLAIMS
No. 12-20; Judge Mary Ellen Coster Williams

————————

OPENING BRIEF FOR THE UNITED STATES

————————

JURISDICTIONAL STATEMENT

Taxpayer Joseph Nacchio[1] filed his individual income tax return

for the 2007 tax year on October 6, 2008.  (A20.)[2]  On March 13, 2009,

———————————

    [1] We refer to Joseph Nacchio alone as the "taxpayer" for purposes
of this appeal.  Nacchio's spouse, Anne Esker, is a party to this case
solely because she filed a joint return with her husband for the tax year
in issue.  The parties stipulated in the proceedings below that Anne
Esker does not have a separate interest, independent from Nacchio's
own interest, in the tax refund claim at issue.  (A734.)

Nacchio filed an amended return for 2007 on which he timely claimed a

refund of tax for that year, relying, *inter alia*, on § 1341 of the Internal

Revenue Code ("I.R.C." or "the Code") (26 U.S.C.).  (A20.)  *See* I.R.C.

§ 6511(a).  The Internal Revenue Service (IRS) disallowed Nacchio's

claim for refund on January 14, 2010 (A552), after which Nacchio

timely initiated this refund suit on January 10, 2012, in the United

States Court of Federal Claims (A19–27).  *See* I.R.C. §§ 6532(a),

7422(a).  The Court of Federal Claims had subject-matter jurisdiction

under 28 U.S.C. § 1491(a)(1).

The Court of Federal Claims entered judgment in favor of Nacchio

on April 30, 2015.  (A1.)  That judgment was a final order, resolving all

claims of all parties.  The United States timely filed a notice of appeal

on June 26, 2015, within 60 days after the entry of judgment.  (A740–

41.)  *See* 28 U.S.C. § 2107(b).  This Court has jurisdiction under 28

U.S.C. § 1295(a)(3).

Nacchio filed a notice of cross appeal on July 7, 2015.  (A742–43.)

The judgment of the Court of Federal Claims, however, was entirely

---

(…continued)

[2] "A" references are to the separately bound record appendix.

favorable to him and thus awarded Nacchio all the relief he sought in his complaint.  (A1, A27.)  It appears that Nacchio filed his cross appeal in the mistaken belief that he was required to do so in order to reassert on appeal certain arguments that were rejected by the Court of Federal Claims.  It is well settled, however, that no cross-appeal is required where, as here, the appellee is not seeking to enlarge the relief accorded him in the trial court's judgment.  *E.g.*, *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1156 (Fed. Cir. 2004) ("A party that is not adversely affected by a judgment lacks standing to appeal.").

## STATEMENT OF THE ISSUES

1.    Whether the Court of Federal Claims erred as a matter of law in holding that taxpayer, Joseph Nacchio, was entitled to a tax deduction of $44,632,464 under I.R.C. § 165 for a criminal forfeiture payment he made to the United States as part of the sentence imposed on him following his criminal conviction for insider trading securities fraud.

2.    Whether, even assuming that Nacchio's forfeiture payment is deductible, the Court of Federal Claims erred as a matter of law in holding that Nacchio's insider trading conviction did not collaterally

estop him from seeking to establish herein that he qualifies for the

special tax relief afforded by I.R.C. § 1341 to a taxpayer who is required

to restore funds to a third party that the taxpayer included in his

income in a prior tax year because it then "appeared that the taxpayer

had an unrestricted right" to such funds.

## STATEMENT OF THE CASE

Taxpayer, Joseph Nacchio, filed this action in the Court of Federal

Claims seeking an income tax refund for the 2007 tax year in the

amount of $17,974,832,[3] pursuant to I.R.C. § 1341.  On the United

States' motion for summary judgment, and Nacchio's cross-motion for

partial summary judgment, the court held, 115 Fed. Cl. 195 (2014), that

Nacchio was entitled to a tax deduction of $44,632,464 for a criminal

forfeiture payment he made to the United States as part of his sentence

following his criminal conviction for securities fraud (insider trading);

that Nacchio's conviction did not preclude him, under the doctrine of

collateral estoppel, from seeking to establish that he qualified for the

special tax relief afforded by § 1341; and that Nacchio was therefore

entitled to go to trial on the question whether, for purposes of

---

[3] All monetary amounts are rounded to the nearest dollar.

§ 1341(a)(1), it "appeared that [he] had an unrestricted right" to the proceeds generated through his insider trading offenses.  (A2–12.)

Following the court's ruling denying the United States' motion for summary judgment and granting Nacchio's cross-motion for partial summary judgment, the United States stipulated to the entry of final judgment in favor of Nacchio, but expressly reserved its right to appeal the court's adverse rulings on the issue of deductibility of the forfeiture for federal income tax purposes and the issue of collateral estoppel. (A726, A731–35.)  The United States now appeals as to those reserved issues.[4]

---

[4] This Court's precedent allows a party to appeal from a stipulated judgment where, as here, the party has expressly reserved its right to appeal contested issues.  *See Appalachian Regional Healthcare, Inc. v. United States*, 999 F.2d 1573, 1576 n.8 (Fed. Cir. 1993); *York Prod., Inc. v. Central Tractor Farm*, 99 F.3d 1568, 1571 (Fed. Cir. 1996); *accord Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 682-83 (7th Cir. 2001); *Keefe v. Prudential Prop. & Cas. Co.*, 203 F.3d 218, 222-23 (3d Cir. 2000); *Slaven v. American Trading Transp. Co., Inc.* 146 F.3d 1066, 1070 (9th Cir. 1998); *BIW Deceived v. Local S6*, 132 F.3d 824, 828 (1st Cir. 1997); *Dorse v. Armstrong World Indus., Inc.* 798 F.2d 1372, 1375 (11th Cir. 1986); *Greenhouse v. Greco*, 544 F.2d 1302, 1305 (5th Cir. 1977).  *But see Amstar Corp. v. Southern Pac. Transport Co.*, 607 F.2d 1100, 1100 (5th Cir. 1979) (an outlier opinion that appears to be in conflict with earlier Fifth Circuit precedent, *see Greenhouse*, *supra*, and which has been criticized, *see Dorse*, 798 F.2d at 1375-76).

## A.    Nacchio's insider trading conviction

Nacchio was the Chief Executive Officer of Qwest

Communications International, Inc. (Qwest) from 1997 to 2001.  (A19.)

As part of his compensation, Nacchio received at various times options

to purchase Qwest stock.  (A19.)  Between January and May 2001,

Nacchio exercised options to purchase, and then sold, more than 2.5

million shares of Qwest stock.  (A19, A39–40.)

In March 2005, the Securities and Exchange Commission (SEC)

filed a civil action in federal court against Nacchio and other Qwest

officers, alleging securities fraud.  (A385–434.)  Subsequently, in

December 2005, a federal grand jury returned an indictment charging

Nacchio with 42 counts of insider trading.  (A36–43.)  The indictment

alleged that Nacchio's 2001 sales of Qwest stock were made on the basis

of material, nonpublic information, and that Nacchio did thereby

"knowingly and willfully" employ a "manipulative and deceptive device,

scheme, artifice or contrivance to defraud" in connection with the

purchase and sale of a security in violation of 15 U.S.C. §§ 78j, 78ff, and

17 C.F.R. §§ 240.10b-5, 240.10b5-1.  (A38–40.)  In accordance with Fed.

R. Crim. P. 32.2, the indictment included criminal forfeiture allegations

pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), wherein

Nacchio, if convicted, would be required to forfeit to the United States

the proceeds of his insider trading offenses.  (A41–42.)  The SEC civil

action against Nacchio was stayed until the conclusion of his criminal

case.  (A439.)

In April 2007, following a 16-day trial, the jury in Nacchio's

criminal case convicted him on 19 counts of insider trading (and

acquitted him on 23 counts) covering trades he made from April 26 to

May 29, 2001.  (A45–56.)  Nacchio was originally sentenced to serve 72

months in prison, to pay a $19 million fine, and to forfeit to the United

States $52,007,545 representing his gross proceeds from the stock sales

underlying the 19 counts on which he was convicted.  (A113–22.)  On

August 16, 2007, the $52,007,545 forfeiture amount was seized by the

United States Marshals Service and later deposited into the

Department of Justice Asset Forfeiture Fund.  (A134–38.)

Nacchio then filed an appeal of his conviction and sentence.  On

appeal, a divided panel of the Tenth Circuit initially reversed his

conviction on the ground that the district court erred in excluding

expert testimony that Nacchio had sought to introduce at trial.  The

Court also held, however, that the United States was entitled to retry Nacchio because the evidence presented by the Government was sufficient to convict him. *United States v. Nacchio*, 519 F.3d 1140 (10th Cir. 2008). The Tenth Circuit then granted the Government's petition for rehearing *en banc* regarding the expert testimony issue, and the full Court ruled that the district court's exclusion of the expert testimony was proper. Accordingly, it reinstated Nacchio's conviction. *United States v. Nacchio*, 555 F.3d 1234 (10th Cir. 2009) (*en banc*), *cert. denied*, 558 U.S. 815 (2009). The case was then remanded to the initial decisional panel to address Nacchio's challenges to his sentence. On remand, the panel upheld most aspects of the original sentence, but it concluded that § 981(a)(2)(B) (18 U.S.C.), rather than § 981(a)(2)(A), applied to calculate the amount that Nacchio was required to forfeit and, therefore, Nacchio should be required to forfeit only his net profit, rather than the gross proceeds, of his insider trading crimes. *United States v. Nacchio*, 573 F.3d 1062, 1087-90 (10th Cir. 2009). The panel then remanded the case to the district court for resentencing consistent with its opinion.

In June 2010, Nacchio was resentenced to serve 70 months in prison, to pay the same $19 million fine, and to forfeit to the United States his net profit from the illegal stock sales in the amount of $44,632,464.[5] (A140–48.) During the resentencing hearing, the district judge described Nacchio's imprisonment, fine, and forfeiture as constituting "three forms of penalty." (A486.) With respect to restitution, the judge explained that "there is no provision in the law for restitution." (A486.) The amended judgment (like the original judgment) thus specified that restitution was "not applicable" and that the amount of restitution imposed was "$0.00." (A143, A148.)

At the conclusion of Nacchio's resentencing hearing, his attorneys asked whether the district court would "direct that the [forfeited proceeds] go to a fund … set up for distribution to [Nacchio's] victims." (A494.) In response, the prosecuting attorney advised the court that it was his understanding that the Government intended to use the funds to compensate victims of Nacchio's fraud through a separate process

---

[5] In July 2010, the U.S. Marshals Service returned to Nacchio the $7,375,081 overage from the $52,007,545 forfeiture amount that had previously been collected. (A135.)

(known as "remission"), but explained that the decision whether to use the funds for such purpose would be "made by the Asset Forfeiture/Money Laundering Section back in Washington pursuant to their regulations." (A494–95.) *See* 28 C.F.R. §§ 9.1–9.9 (remission process and procedures). In April 2012, the Attorney General's delegate (Chief of the Asset Forfeiture and Money Laundering Section, Criminal Division) authorized remission of Nacchio's forfeited funds to eligible victims of Nacchio's fraud (A251–54), and thereafter $44,104,064 of the forfeited amount was distributed pro-rata to those victims (A135, 513).

In January 2011, Nacchio and the SEC entered into a settlement of the SEC's civil action against him. (A498–504.) The settlement required that Nacchio disgorge the sum of $44,632,464, less any amounts forfeited and paid to the United States by Nacchio in connection with his criminal case. (A502.) Nacchio's payment of the $44,632,464 forfeiture in his criminal case thus satisfied his disgorgement obligation in the SEC civil action.

## B.    Nacchio's tax refund claim

In March 2009, Nacchio filed a claim for refund with the IRS asserting that, under I.R.C. § 1341,[6] he was entitled to a refund for his 2007 tax year for the amount of tax (approximately $18 million) he had paid for the 2001 tax year on the gain from his insider trading activity – gain that he was required to forfeit in 2007 under the sentence imposed

---

[6] I.R.C. § 1341 provides special tax relief if –

> (1) an item was included in gross income for a prior taxable year … because it appeared that the taxpayer had an unrestricted right to such item;

> (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year … that the taxpayer did not have an unrestricted right to such item …; and

> (3) the amount of such deduction exceeds $3,000.

I.R.C. § 1341(a)(1)–(3).  If these conditions are satisfied, the tax for the taxable year is the lesser of the tax for such year computed with such deduction; or an amount equal to the tax for the taxable year computed without such deduction, minus the decrease in tax for the prior taxable year which would result from the exclusion of the item in question from the taxpayer's gross income for the prior taxable year.  I.R.C. § 1341(a)(4)–(5).  Thus, as an alternative to a simple deduction in the year of repayment, § 1341 allows eligible taxpayers to reduce their tax liability in the year of repayment by the amount of tax paid in the prior year due to the inclusion in income of the repaid amount, if doing so would result in a lower tax.

in his criminal case.  (A20.)  The IRS determined that Nacchio was not

eligible for relief under § 1341, and denied his refund claim, on the

ground that his forfeiture was "the payment of a penalty for a violation

of the law" and, as such, was not deductible under the Internal Revenue

Code.  (A552.)  Nacchio then filed the instant suit challenging the IRS's

determination.

## C.    The proceedings in the Court of Federal Claims

### 1.    The summary judgment proceedings

In the Court of Federal Claims, the United States moved for

summary judgment contending that Nacchio was not entitled to any

refund for the tax year in issue.  The Government argued that Nacchio

was not entitled to any deduction in 2007 for his forfeiture payment to

the United States and, therefore, was not entitled to any tax refund for

that year.  The Government further contended that, even if Nacchio's

forfeiture payment were deductible (as a trade or business expense

under § 162 or as a loss under § 165, as Nacchio maintained), § 1341

relief was still unavailable because it could not have "appeared" to

Nacchio in 2001 that he had an "unrestricted right" to the illicit

proceeds from his insider trading crimes.  Thus, the Government

maintained, Nacchio, at the most, would be entitled to only a small refund for 2007.

As to the issue of deductibility, the Government argued that a deduction under § 162 for Nacchio's forfeiture payment was prohibited by § 162(f), which bars a deduction under that section "for any fine or similar penalty paid to a government for the violation of any law."  The Government further argued that the public policy underlying the enactment of § 162(f) likewise precluded a loss deduction under § 165 because allowance of a deduction "would frustrate sharply defined national … policies" proscribing insider trading by "reducing the sting" of the forfeiture penalty.  *See Tank Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30, 33-36 (1958).

Regarding the additional requirement under I.R.C. § 1341(a)(1) that it must have "appeared that the taxpayer had an unrestricted right" to the income in question, the Government maintained that it followed as a matter of law from Nacchio's criminal conviction, and from this Court's decision in *Culley v. United States*, 222 F.3d 1331 (Fed. Cir. 2000), that it could not have appeared to Nacchio in 2001 that he had an unrestricted right to the insider trading proceeds he had obtained

through his knowing and intentional fraud.  We pointed out that, as this Court explained in *Culley*, "[w]hen a taxpayer knowingly obtains funds as the result of fraudulent action, it simply cannot appear from the facts known to him at the time that he has a legitimate, unrestricted claim to the money."  *Id.* at 1335-36.  We further contended in this regard that Nacchio was precluded, under the doctrine of collateral estoppel (issue preclusion), from relitigating the jury's determination in his criminal proceeding that he had violated the insider trading laws (through which he had obtained the funds in question) "willfully, knowingly, and with the intent to defraud."

Nacchio filed a cross-motion for partial summary judgment contending that his forfeiture payment was deductible under either § 162 or § 165, and that neither § 162(f) nor public policy prohibited such deduction.  Nacchio also argued that collateral estoppel was inapplicable because his criminal conviction did not resolve the factual question whether he subjectively believed that he had an unrestricted right to the proceeds of his illegal stock sales and that, therefore, he was entitled to go to trial on that question.

14

## 2.    The Court of Federal Claims' opinion

The Court of Federal Claims denied the United States' motion for summary judgment and granted Nacchio's cross-motion for partial summary judgment.  (A2–12.)  As to the issue of deductibility, the court held that Nacchio's forfeiture payment was a deductible loss under I.R.C. § 165(c)(2), relating to "losses incurred in any transaction entered into for profit, though not connected with a trade or business."[7]  The court rejected the Government's arguments that deduction of the forfeiture was barred by § 162(f) and on public policy grounds.  (A7–10.) The court acknowledged that, in determining deductibility under § 165, "it is appropriate to take into account the public policy considerations embodied in § 162(f)," but the court went on to conclude that Nacchio's forfeiture payment was not a "fine or similar penalty" within the meaning of § 162(f).  The court's rationale was that Nacchio's forfeiture was not "the type of penalty that is 'similar to' a fine" because, "[u]nlike the fine, which was clearly punitive and was paid from assets unrelated

---

[7] The court rejected Nacchio's argument that the forfeiture payment was deductible under § 162 as an ordinary expense of carrying on a trade or business as the CEO of Qwest, explaining that "Nacchio's forfeiture arose from his 2007 conviction for insider trading, not from carrying out business as Qwest's CEO."  (A10 n.7.)

to insider trading, the forfeiture exclusively represented the disgorgement of Mr. Nacchio's illicit net gain from insider trading." (A9–10.)  The court then concluded that such disgorgement served a "compensatory purpose" because the prosecution had informed the district court during Nacchio's resentencing hearing on June 24, 2010, that the forfeited funds would be used to compensate victims of Nacchio's fraud, and further that, on April 17, 2012, the Department of Justice had authorized the remission of most of the forfeited funds to compensate eligible victims.  (A10.)

Turning next to the question whether Nacchio could meet the additional requirement for relief under I.R.C. § 1341, the court held that the issue whether it "appeared" to Nacchio in 2001 that he had an "unrestricted right" to the proceeds from his illegal stock sales presented a genuine issue of fact for trial, notwithstanding that Nacchio had been convicted of obtaining those proceeds through his willful violation of the securities laws.  (A10–11.)  In so holding, the court rejected the United States' assertion of collateral estoppel based on Nacchio's criminal conviction, stating that "[t]he precise issue of whether Mr. Nacchio himself subjectively believed he had an

16

unrestricted right to the funds he received from trading in 2001 was not adjudicated in the criminal proceeding." The court noted, consistent with this Court's opinion in *Culley*, that the issue under § 1341 "is not simply whether [the taxpayer] obtained funds unlawfully, but whether it subjectively appeared to him that he had an unrestricted right to those funds." The court distinguished *Culley*, however, on the ground that the taxpayer there had entered a plea of guilty, whereas "Mr. Nacchio did not plead guilty to insider trading – an admission which could result in a finding that he had subjectively believed he was not entitled to the gain." (A11.) The court further reasoned that (emphasis in original):

> Although the jury in the criminal trial believed Mr. Nacchio was guilty of willfully engaging in insider trading, this does not equate to a finding of what Mr. Nacchio himself believed. Mr. Nacchio professed his innocence, and nothing in this Court's record from the criminal proceeding sheds any light on the bona fides of Mr. Nacchio's belief. Indeed, Mr. Nacchio did not testify in his criminal trial, invoking his Fifth Amendment privilege against self-incrimination.

(A11.) The court therefore concluded that "Mr. Nacchio's subjective belief as to his claim of right to the forfeited gain was not adjudicated in his criminal trial, and Plaintiffs are not barred from litigating his belief under the doctrine of issue preclusion." (A11.)

17

The United States moved for reconsideration of the court's order, but the court denied the motion (without opinion) (A723) and subsequently entered a scheduling order for discovery and trial (A724–25).

### 3.    The stipulated judgment

On April 21, 2015, the United States, rather than proceed to trial on the issue of Nacchio's "subjective belief," stipulated to the entry of a final judgment in favor of Nacchio that expressly reserved the United States' right to appeal the court's adverse rulings as to the deductibility and collateral estoppel issues.  (A726, A731–35.)  Pursuant to the parties' stipulation, the court entered judgment in favor of Nacchio for "the sum of $17,974,832.00 due for the 2007 tax year, pursuant to Section 1341 of the Internal Revenue Code, plus interest as provided by law."  (A1, A739.)  The judgment noted that the "parties reserve all rights to appeal."  (A1.)

The United States now appeals.

## SUMMARY OF ARGUMENT

1.    The Court of Federal Claims erred as a matter of law in holding that Nacchio was entitled to a tax deduction for the forfeiture to the United States of his criminal proceeds obtained from insider

trading, imposed as part of the sentence in his criminal case.  Before 1969, tax deductions for trade or business expenses under I.R.C. § 162 and for losses under I.R.C. § 165 were subject to the same public policy limitation that precludes a deduction where its allowance would frustrate sharply defined national or state policies proscribing particular types of conduct by reducing the sting of a penalty imposed by law.  With the enactment of § 162(f) in 1969, Congress codified this "frustration of public policy" doctrine in the context of trade or business expense deductions under § 162.  After the enactment of § 162(f), the analogous public policy limitation on loss deductions under § 165 is at least as broad as the codified enactment of that policy in § 162(f), so that, as the court acknowledged in this case, a deduction that would be barred by § 162(f) would likewise be precluded under § 165 on public policy grounds.

The court's conclusion that Nacchio's criminal forfeiture was not a "fine or similar penalty" within the meaning of § 162(f) because, in the court's view, it served a "compensatory purpose" was wrong.  The court failed to apply the governing Treasury Regulations that define "fine or similar penalty" in a manner that plainly encompasses Nacchio's

19

forfeiture, and instead conducted a "purpose inquiry" analysis for determining deductibility under § 162(f) that was expressly rejected by this Court in *Colt Indus., Inc. v. United States*, 880 F.2d 1311 (Fed. Cir. 1989).

The court's further conclusion that the forfeiture was compensatory in nature was also wrong in any event. Nacchio's forfeiture was imposed as a mandatory punishment for his insider trading crimes, as is evident from the forfeiture statutes pursuant to which it was imposed. Those statutes impose forfeiture only if the defendant "in a criminal case" is "convicted" of the underlying offense, in which event the district court "shall order" the forfeiture "as part of the sentence in the criminal case." Supreme Court precedent establishes that such criminal forfeitures are punitive, and the various Courts of Appeals, and even the district court in Nacchio's own criminal case, unanimously have characterized forfeiture imposed pursuant to the specific forfeiture statutes at issue here as punitive rather than compensatory. The court's reliance on *Stephens v. Commissioner*, 905 F.2d 667 (2d Cir. 1990), was misplaced because *Stephens* involved the deductibility of *restitution* paid to a *victim*, not *forfeiture* paid to a

*government*, which serves an entirely different purpose. Other than the trial court's decision in this case, the courts have consistently denied tax deductions for forfeitures paid to the government.

Finally, the court's focus on the Attorney General's discretionary decision to use the forfeited funds to grant remission to victims of Nacchio's crimes to conclude that the forfeiture was compensatory rather than punitive in nature was erroneous. The discretionary act of the Attorney General regarding how to use the forfeited funds, made years after Nacchio forfeited his criminal proceeds in 2007, did not alter the character of Nacchio's criminal forfeiture as a "fine or similar penalty" under § 162(f).

2.    The Court of Federal Claims also erred as a matter of law in holding that Nacchio's conviction for insider trading did not collaterally estop him from seeking to establish herein that it "appeared" to him in 2001 that he had an "unrestricted right" to the proceeds of his criminal insider trading stock sales for purposes of I.R.C. § 1341(a)(1). This Court held in *Culley*, 222 F.3d 1331, that it cannot appear to a taxpayer who knowingly obtains funds through fraud that he has an "unrestricted right" to those funds for purposes of § 1341. Nacchio's

criminal conviction for insider trading conclusively established that he obtained the stock proceeds in issue through his knowing and intentional fraud.  Therefore, as a matter of law under *Culley*, it could not have appeared to Nacchio that he had an unrestricted right to those proceeds.

The court's conclusion that collateral estoppel did not apply because the jury in Nacchio's criminal case was not required to adjudicate his "subjective belief" was simply incorrect.  Fraudulent intent is a necessary element of the crime of insider trading, and the district court's instructions to the jury in Nacchio's criminal case confirm that the jury was specifically charged with adjudicating Nacchio's state of mind and could convict him only if it found, beyond a reasonable doubt, that he violated the insider trading laws "willfully, knowingly, and with the intent to defraud."  It was not necessary for purposes of applying collateral estoppel that the jury's determination in this regard be based on, or be informed by, Nacchio's own trial testimony or confession of guilt, contrary to the holding of the trial court here.

Equally misguided is the court's attempt to distinguish *Culley* on the ground that the taxpayer there pleaded guilty, whereas Nacchio was instead convicted by a jury after trial. This Court's decision in *Culley* did not turn on the fact that the taxpayer there pleaded guilty instead of being convicted by a jury, but instead was based on the established criminal wrongdoing of the taxpayer in that case that precluded, as a matter of law, his claim that it appeared to him that he had an unrestricted right to the proceeds in question. *Culley* is controlling here on this issue.

## ARGUMENT

## I

**The Court of Federal Claims erred as a matter of law in holding that Nacchio was entitled to a tax deduction for the proceeds from his illegal stock sales that he forfeited to the United States as part of the sentence in his criminal case for insider trading**

### Standard of review

Whether Nacchio is entitled to an income tax deduction for the amount he forfeited to the Government as part of his criminal sentence for insider trading is a question of law, reviewable *de novo*.

## A.    Introduction:  The limitation on deductibility imposed by the "frustration of public policy" doctrine

I.R.C. § 165(a) provides for a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise."  In the case of individuals, § 165(c) limits the losses deductible to those incurred in a trade or business, in a transaction entered into for profit, or those caused by fire, storm, shipwreck, theft, or other casualty.  Loss deductions are also subject to an overriding public policy limitation that precludes a deduction where its allowance "would frustrate sharply defined national or state policies proscribing particular types of conduct, evidenced by some governmental declaration thereof."  *Tank Truck Rentals*, 356 U.S. at 33-36 (citing *Commissioner v. Heininger*, 320 U.S. 467, 473-74 (1943)).

In *Tank Truck Rentals*, the Supreme Court upheld the disallowance of a deduction for fines paid by a trucking company for violations of state maximum weight laws, observing that "[w]here a taxpayer has violated a federal or a state statute and incurred a fine or penalty he has not been permitted a tax deduction for its payment." 356 U.S. at 34.  In determining the deductibility of the fines, the Court recognized the need to strike a balance between "the congressional

24

intent to tax only net income, and the presumption against congressional intent to encourage violation of declared public policy." *Id.* at 35. The Court noted that the frustration of public policy is highest "when the expenditure for which the deduction is sought is itself prohibited by statute"; it then added that the injury is "only slightly less remote" where, as is the case here, the deduction is sought for "the payment of a penalty imposed … because of such an act." *Id.* Thus, despite the resulting tax on gross (and not net) income, the Court denied deductions for the fines there in issue, explaining that "[d]eduction of fines and penalties uniformly has been held to frustrate state policy in severe and direct fashion by reducing the 'sting' of the penalty prescribed by the state legislature." *Id.* at 35-36. *See also Commissioner v. Tellier*, 383 U.S. 687, 694 (1966) (explaining that "to allow a deduction [for a fine or penalty] would have directly and substantially diluted the actual punishment imposed"); *Jerry Rossman Corp. v. Commissioner*, 175 F.2d 711, 713 (2d Cir. 1949) ("[W]hen acts are condemned by law and their commission is made punishable by fines or forfeitures, to allow these to be deducted from the wrongdoer's gross income, reduces, and so in part defeats, the prescribed

25

punishment.  Obviously, to relieve the wrongdoer of a part of the tax due upon his income, in effect is to remit that much of the sanction imposed …").

The "frustration of public policy" doctrine consistently has been applied to preclude tax deductions for forfeitures of property to the Government.  For example, in *Wood v. United States*, 863 F.2d 417 (5th Cir. 1989), the Fifth Circuit denied a loss deduction for the forfeiture of proceeds from the taxpayer's drug trafficking activities.  The Court explained (at 421):

> It is obvious … that the public policy embodied in this nation's drug laws is not enhanced by allowing a tax deduction to offset a forfeiture….  Forfeiture cannot seriously be considered anything other than an economic penalty for drug trafficking.

The Court concluded that "[a]llowing a loss deduction would certainly 'take the sting' out of a penalty intended to deter drug dealing."  *Id.* at 422.  Similarly, in *United States v. Algemene Kunstzijde Unie N.V.*, 226 F.2d 115 (4th Cir. 1955), the Fourth Circuit denied a deduction for the forfeiture of property under the Trading with the Enemy Act.  To allow a deduction, the Court explained, "would be contrary to the well established public policy of the country":

> It would be nothing short of absurd to allow the holder of
> enemy property which has been taken over by the
> government under the trading with the enemy act to recover
> back a part of it under the guise of a tax deduction …

226 F.2d at 119. To the same effect are *Fuller v. Commissioner*, 213 F.2d 102, 105-06 (10th Cir. 1954) (no loss deduction for the cost of whiskey confiscated by law enforcement agencies of a "dry" state); *King v. United States*, 152 F.3d 1200, 1201-02 (9th Cir. 1998) (no loss deduction for forfeiture of drug trafficking profits); *Holt v. Commissioner*, 69 T.C. 75, 79-81 (1977), *aff'd*, 611 F.2d 1160 (5th Cir. 1980); *Hopka v. United States*, 195 F. Supp. 474, 482-83 (N.D. Iowa 1961); *Hackworth v. Commissioner*, T.C. Memo 2004-173, at *3-6, *aff'd*, 155 Fed. Appx. 627 (4th Cir. 2005); *Murillo v. Commissioner*, T.C. Memo 1998-13, at * 2-3, *aff'd*, 166 F.3d 1201 (2d Cir. 1998) (table); *Bailey v. Commissioner*, T.C. Memo 1989-674, *aff'd*, 929 F.2d 700 (6th Cir. 1991) (table); *see also Davis v. Commissioner*, 17 T.C. 549, 555-57 (1951) (no loss deduction for a penalty paid under § 16(b) of the Securities Exchange Act of 1934 because a deduction would contravene the public policy of maintaining a "free and open market for trading in securities").

**B.    The codification of the "frustration of public policy" doctrine in § 162(f)**

I.R.C. § 162(a) provides that, in general, a deduction shall be allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business …"  Prior to 1969, the deduction of trade or business expenses under § 162(a) was limited by the same public policy doctrine that precluded loss deductions under § 165 when their allowance would frustrate sharply defined public policy.

In 1969, Congress codified, in § 162 of the Code, the "frustration of public policy" doctrine as part of the Tax Reform Act of 1969, Pub. L. No. 91-172, § 902(a), 83 Stat. 487, 710.  Congress therein denied a deduction for payments in situations "which are deemed to violate public policy," including bribes and illegal kickbacks (§ 162(c)), fines and similar penalties paid to a government for the violation of any law (§ 162(f)), and the penalty portion of treble damage payments under the antitrust laws (§ 162(g)).[8]  S. Rep. No. 91-552, at 274 (1969).

---

[8] In amending § 162, Congress intended to preempt the field where trade or business expenses are concerned.  *See* S. Rep. No. 91-552, at 274 ("The provision for the denial of the deduction for payments

(continued...)

Section 162(f), the relevant provision here, thus provides:

(f) FINES AND PENALTIES.— No deduction shall be allowed
under subsection (a) for any fine or similar penalty paid to a
government for the violation of any law.

The legislative history indicates that this particular measure was
intended to codify prior court decisions disallowing deductions for fines
and similar penalties imposed for statutory violations. *See* S. Rep. No.
91-552, at 274; H.R. Conf. Rep. No. 91-782, at 331 (1969); *see also Colt
Industries*, 880 F.2d at 1313. The amendments to § 162, however, did
not explicitly affect § 165. Thus, the limitation imposed under prior
case law where the allowance of a deduction would frustrate public
policy still applies to the determination of the deductibility of losses
under § 165. *Stephens v. Commissioner*, 905 F.2d 667, 672 (2d Cir.
1990); Revenue Ruling 77-126, 1977-1 C.B. 47, 48 (1977).

Moreover, the existing public policy limitation on the deduction of
losses under § 165 is at least as broad as the codified enactment of that
policy in § 162(f) in the context of trade or business expense deductions.

--------------------

(…continued)

in these situations which are deemed to violate public policy is intended
to be all inclusive. Public policy, in other circumstances, generally is
not sufficiently clearly defined to justify the disallowance of
deductions.").

*Stephens*, 905 F.2d at 672 ("Congress can hardly be considered to have intended to create a scheme where a payment would not pass muster under Section 162(f), but would still qualify for deduction under Section 165."); *Medeiros v. Commissioner*, 77 T.C. 1255, 1261 n.7 (1981) ("[W]e cannot ascribe to Congress the intent, in enacting section 162(f), to disallow the deduction of this penalty under section 162(a) but to allow it as a loss deduction under section 165(a)."); *Rust Communications Group, Inc. v. United States*, 20 Cl. Ct. 392, 398-99 (1990) (J. Rader); *see also* Treas. Reg. (26 C.F.R.) § 1.165-1(a) (loss deductions are "subject to any provision of the internal revenue laws which prohibits or limits the amount of the deduction"). Accordingly, the bar of § 162(f) cannot be avoided by characterizing the deduction as a loss under § 165(a), rather than a trade or business expense under § 162(a).[9] *Stephens*, 905 F.2d at 672.

---

[9] Nacchio made no contention to the contrary in the Court of Federal Claims. Moreover, the court below expressly agreed with the decision in *Stephens* that a deduction barred by § 162(f) would be similarly barred under § 165. (A9.)

30

**C.    The Court of Federal Claims erred in holding that a tax deduction for Nacchio's criminal forfeiture payment was not barred by § 162(f) and the public policy grounds underlying that provision**

The Court of Federal Claims erred in holding that § 162(f) and the analogous public policy limitation under § 165 did not apply to bar the deduction of Nacchio's forfeiture payment.  Specifically, the court's holding that Nacchio's forfeiture was not a "fine or similar penalty" within the meaning of § 162(f) because, in the court's view, the forfeiture served a "compensatory purpose" is plainly wrong.[10]

Contrary to the holding of the court, Nacchio's forfeiture falls squarely within the ambit of § 162(f) as a fine or similar penalty paid to the United States as punishment for Nacchio's criminal violations of the federal securities laws.  The Attorney General's subsequent exercise of his discretionary authority to use the forfeited funds to grant remission

---

[10] The court mischaracterized the Government's arguments as "aim[ing] to … tax Mr. Nacchio and his wife on income they did not realize" and "seek[ing] to tax" Nacchio's insider trading proceeds, but "*not* on the ground that they are income …" (A7, A8.) (emphasis added). Under *James v. United States*, 366 U.S. 213 (1961), Nacchio's unlawful insider-trading gains constituted income (and were properly taxed to him) in 2001 when received.  The issue here is whether Nacchio was entitled to a *deduction* in 2007 for his payment in that year of the $44,632,464 he was required to forfeit as part of his criminal sentence.

to victims of Nacchio's crimes did not alter the character of the forfeiture as a fine or similar penalty within the meaning of § 162(f). Because § 162(f) applies to bar a deduction for the forfeiture under § 162, the coextensive public policy limitation underlying the enactment of § 162(f) likewise precludes a loss deduction under § 165. *Stephens*, 905 F.2d at 972; *Medeiros*, 77 T.C. at 1261 n.7.

### 1. Nacchio's criminal forfeiture was a "fine or similar penalty" within the meaning of § 162(f)

As demonstrated below, the court's conclusion that Nacchio's forfeiture was not a "fine or similar penalty" within the meaning of § 162(f) was erroneous for several reasons.

### a. Nacchio's criminal forfeiture was a "fine or similar penalty" as that phrase is defined in the Treasury Regulations

The court first erred by disregarding the applicable Treasury Regulations that define the phrase "fine or similar penalty" in § 162(f) in a manner that plainly encompasses Nacchio's forfeiture.

Treas. Reg. § 1.162-21(b)(1)(i) defines "fine or similar penalty" to include "an amount—(i) Paid pursuant to conviction or a plea of guilty or *nolo contendere* for a crime (felony or misdemeanor) in a criminal proceeding." Nacchio's forfeiture was imposed by the district court as

32

part of his sentence in his criminal case pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), based on the criminal forfeiture

allegations contained in the indictment.  Section 981, as amended by

the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No.

106-185, § 20, 114 Stat. 202, 224, authorizes the forfeiture of "proceeds"

traceable to numerous felony offenses, including any offense

constituting "specified unlawful activity," which includes Nacchio's

insider trading crimes.  18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7)(A),

1961(1)(D) (listing "any offense involving … fraud in the sale of

securities").  28 U.S.C. § 2461(c), also enacted by CAFRA, § 16, 114

Stat. 202, 221, further provides that, if the defendant in a criminal case

is convicted of "a violation of an Act of Congress for which the civil or

criminal forfeiture of property is authorized," and the Government

includes notice of the forfeiture in the indictment, then "the court shall

order the forfeiture of the property *as part of the sentence in the*

*criminal case* pursuant to the Federal Rules of Criminal Procedure and

section 3554 of title 18, United States Code." (emphasis added).

Section 3554 (relating to "criminal forfeiture" orders), in turn, similarly

provides that "[t]he court, *in imposing a sentence on a defendant who*

*has been found guilty* … shall order … that the defendant forfeit property to the United States in accordance with the provisions of [21 U.S.C. § 853].” (emphasis added).

Thus, although 18 U.S.C. § 981 typically governs “civil forfeitures,” “28 U.S.C. § 2461(c) permits the government to seek *criminal* forfeiture whenever civil forfeiture is available *and* the defendant is found guilty of the offense.” *United States v. Newman*, 659 F.3d 1235, 1239 (9th Cir. 2011) (emphases in original); *accord, e.g.*, *United States v. Padron*, 527 F.3d 1156, 1161-62 (11th Cir. 2008) (“Congress enacted 28 U.S.C. § 2461(c) … to make criminal forfeiture available in every case that the criminal forfeiture statute does not reach but for which civil forfeiture is legally authorized.”); *United States v. Vampire Nation*, 451 F.3d 189, 201 (3d Cir. 2006) (“Congress intended to expand the availability of criminal forfeiture to the comprehensive list of crimes referenced in 18 U.S.C. § 1956(c)(7)”). “Section 2461(c) thus authorizes criminal forfeiture as a punishment for any act for which civil forfeiture is authorized, and allows the government to combine criminal conviction and criminal forfeiture in a consolidated proceeding.” *United States v. Razmilovic*, 419 F.3d 134,

136-37 (2d Cir. 2005). Pursuant to these forfeiture provisions, the district court in Nacchio's criminal case was required to order as part of the sentence that Nacchio forfeit his criminal insider trading proceeds to the United States. These forfeiture statutes, and the judgment itself in Nacchio's criminal case, establish unequivocally that Nacchio's forfeiture was "paid pursuant to conviction … for a crime (felony or misdemeanor) in a criminal proceeding," and thus constituted a "fine or similar penalty" for purposes of § 162(f).[11] Treas. Reg. § 1.162-21(b)(1)(i); *cf. United States v. Bajakajian*, 524 U.S. 321 (1998) (holding that a criminal forfeiture imposed as part of the sentence upon conviction of the defendant in a criminal case constitutes a "fine" for purposes of the Excess Fines Clause of the Eighth Amendment).

This Court gave controlling weight to the regulation's definition of "fine or similar penalty" in *Colt Industries*, 880 F.2d 1311. The taxpayer in that case sought to deduct civil penalties it had paid to the State of Pennsylvania based on violations of the Clean Water Act and the Clean Air Act. This Court denied the deductions, relying on the

---

[11] Nacchio's willful violations of the securities laws were felony offenses. *See* 15 U.S.C. § 78ff(a).

"plain language" of § 162(f) and on the definition of "fine or similar penalty" provided in Treas. Reg. § 1.162-21(b)(1)(ii) and (iii), subsections of the same regulation on which the Government relies here. *Id.* at 1313. Having concluded that the regulation's definition encompassed the civil penalties there in question, this Court forcefully rejected the taxpayer's argument that the Court was required to "determine the purpose or purposes served by the specific civil penalty payment at issue in order to ascertain whether the payment is barred from deduction." *Id.* at 1314. "[T]hat is not our office," this Court instructed, because "Congress has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code." *Id.* (quoting *United States v. Correll*, 389 U.S. 299, 307 (1967)). This Court continued—

> As is apparent, neither the statute nor the regulations prescribe a "purpose" inquiry. It is therefore beyond our mandate to embark on one to make our own assessment of the deductibility of a particular penalty. "The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *Id.* "Treas. Reg. § 1.162–21(1)(b)(iii) is a valid interpretation of section 162(f) of the Internal Revenue Code," *Adolf Meller Co. v. United States*, 220 Ct. Cl. 500, 600 F.2d 1360, 1364 (1979), and Colt does not suggest otherwise.

36

*Id.  But see Talley Indus. Inc. v. Commissioner*, 116 F.3d 382, 385 (9th Cir. 1997) ("Whether a civil penalty is deductible depends upon 'the purpose which the statutory penalty is to serve.'") (quoting *Southern Pac. Trans. Co. v. Commissioner*, 75 T.C. 497, 653 (1980)).  The instant case involves a criminal forfeiture, not a civil penalty, and thus *Talley* is inapposite at all events.

Notwithstanding this Court's clear directive that courts should not engage in a "purpose inquiry" to determine deductibility under § 162(f), the Court of Federal Claims erred in this case by determining what it believed to be a "compensatory purpose" served by Nacchio's forfeiture, rather than simply applying the regulation's definition of "fine or similar penalty."  The court's failure to apply the governing regulations, and to adhere to this Court's precedent in *Colt Industries*, led to its erroneous conclusion that Nacchio's forfeiture was not "the type of penalty that is 'similar to' a fine."

### b.  Nacchio's criminal forfeiture was a mandatory punishment for his insider trading crimes

The court's further conclusion that the forfeiture was compensatory (and thus was not a "fine or similar penalty" under

§ 162(f)) was erroneous at all events. Nacchio's criminal forfeiture was not compensatory but, rather, was a mandatory punishment for his insider trading offenses. *Newman*, 659 F.3d at 1239-42; *United States v. Blackman*, 746 F.3d 137, 142-43 (4th Cir. 2014).

As noted, forfeiture proceedings can be either civil or criminal. In a civil forfeiture action, the government brings suit against the property associated with a crime in an *in rem* proceeding in which the guilt or innocence of the property owner is irrelevant – "it is the property which is proceeded against, and … held guilty and condemned as though it were conscious instead of inanimate and insentient." *Bajakajian*, 524 U.S. at 330 (quoting *Various Items of Personal Property v. United States*, 282 U.S. 577, 581 (1931)). Criminal forfeiture, by contrast, is an *in personam* proceeding against the property owner, not the property, and "is meant to punish the property owner for criminal conduct." *Vereda v. United States*, 271 F.3d 1367, 1376 (Fed. Cir. 2001). "The forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners." *Bajakajian*, 524 U.S. at 332; *see also Libretti v. United States*, 516 U.S. 29, 39 (1995) ("Congress conceived of forfeiture as punishment for the commission of

various … crimes."). In *Bajakajian*, the Supreme Court considered whether a criminal forfeiture under 18 U.S.C. § 982 was a "fine" for Eighth Amendment purposes. The Court concluded it was a "fine" because, as indicated by the forfeiture statute, the forfeiture constituted "punishment for an offense":

> We have little trouble concluding that the forfeiture of currency ordered by § 982(a)(1) constitutes punishment. The statute directs a court to order forfeiture as an additional sanction when "imposing sentence on a person convicted of" a willful violation of § 5316's reporting requirement. The forfeiture is thus imposed at the culmination of a criminal proceeding and requires conviction of an underlying felony, and it cannot be imposed upon an innocent owner of unreported currency, but only upon a person who has himself been convicted of a § 5316 reporting violation.

524 U.S. at 328.

Forfeiture in criminal proceedings under 18 U.S.C. § 981 and 28 U.S.C. § 2461(c) is an *in personam* proceeding. *United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012). Like the forfeiture statute at issue in *Bajakajian*, 28 U.S.C. § 2461(c) authorizes criminal forfeiture only if the defendant "in a criminal case" is "convicted of the offense giving rise to the forfeiture," in which case the court "shall order" forfeiture "as part of the sentence in the criminal case." 28 U.S.C. § 2461(c). The forfeiture is thus imposed at the culmination of a

39

criminal proceeding, requires a conviction of an underlying felony, and cannot be imposed upon an innocent person. As the Supreme Court explained, "[s]uch forfeitures have historically been treated as punitive, being part of the punishment imposed for felonies and treason in the Middle Ages and at common law." *Bajakajian*, 524 U.S. at 332; *accord Libretti*, 516 U.S. at 39 ("Our precedents have ... characterized criminal forfeiture as an aspect of punishment imposed following conviction of a substantive criminal offense."). The courts thus uniformly have held that criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), specifically, is punitive rather than compensatory. *United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014); *Blackman*, 746 F.3d at 143; *Contorinis*, 692 F.3d at 146; *Newman*, 659 F.3d at 1241; *United States v. Venturella*, 585 F.3d 1013, 1019-20 (7th Cir. 2009); *United States v. Taylor*, 582 F.3d 558, 566 (5th Cir. 2009); *United States v. Alamoudi*, 452 F.3d 310, 313-14 (4th Cir. 2006); *Razmilovic*, 419 F.3d at 136. The district court itself in Nacchio's criminal case noted that Nacchio's criminal forfeiture was "hawkishly focused on punishment and deterrence," *United States v. Nacchio*, 2007 WL 2221437 at *7 (D. Colo. 2007), and constituted a "form[ ] of penalty" (A486). There is no

authority supporting the contrary notion embraced by the court below

that criminal forfeiture is not necessarily a punishment and may be

regarded in some circumstances as compensatory.

### c.    The Second Circuit's decision in *Stephens* is inapposite

The Second Circuit's decision in *Stephens*, 905 F.2d 667, on which

the court below placed great reliance, does not support the court's

decision that Nacchio's forfeiture was compensatory in nature.

*Stephens* involved the deductibility of a *restitution* payment, not a

criminal *forfeiture*.  The defendant in *Stephens* had been criminally

convicted of defrauding Raytheon Corporation.  He was sentenced to

concurrent 5-year prison terms and also fined.  The court suspended

execution of an additional 5-year prison term on the condition that the

defendant make restitution *to Raytheon*.  The defendant paid

restitution to Raytheon and claimed the payment as a loss deduction

under § 165.  The Second Circuit agreed with the Commissioner that

the claimed deduction should be disallowed on public policy grounds if

the taxpayer's payment constituted a fine or similar penalty within the

meaning of § 162(f).  The court determined, however, that the

restitution payment was primarily a remedial measure to compensate

Raytheon, not to punish the defendant. *Id.* at 672-73. Moreover, the payment was made to Raytheon, not "to a government." *Id.* at 673-74. The court therefore concluded that the public policy underlying the enactment of § 162(f) would not be undermined by the allowance of the deduction claimed by the defendant.

The instant case involves mandatory criminal forfeiture, not discretionary restitution ordered by a court. *Newman*, 659 F.3d at 1240. It is well established that restitution and forfeiture are separate remedies with sharply distinctive purposes: "While restitution seeks to make victims whole by reimbursing them for their losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice." *Joseph*, 743 F.3d at 1354; *accord Blackman*, 746 F.3d at 143 ("These two aspects of a defendant's sentence serve distinct purposes: restitution functions to compensate the victim, whereas forfeiture acts to punish the wrongdoer."); *United States v. Webber*, 536 F.3d 584, 602-03 (7th Cir. 2008) ("Forfeiture and restitution are distinct remedies. Restitution is remedial in nature, and its goal is to restore the victim's loss. Forfeiture, in contrast, is punitive; it seeks to disgorge any profits that the offender realized from

42

his illegal activity."); *United States v. Torres*, 703 F.3d 194, 203 (2d Cir. 2012) ("Case law and commentary establish that the forfeiture and restitution statutes serve different purposes…. The measures are different, and the purposes distinct."); *Venturella*, 585 F.3d at 1019-20; *Newman*, 659 F.3d at 1241; *Taylor*, 582 F.3d at 566. That Nacchio's criminal forfeiture was distinct from any requirement that he pay restitution to his victims is confirmed by the judgment in Nacchio's criminal case, which specifically provided that the amount of restitution owed was "$0.00." (A143.) Furthermore, the amount that Nacchio was required to forfeit was equal to his criminal "proceeds," *i.e.*, his "net profit" generated through his fraud, *Nacchio*, 573 F.3d at 1088; 18 U.S.C. § 981(a)(2)(B), and was thus unrelated to the amount of losses suffered by his victims. *See United States v. McGinty*, 610 F.3d 1242, 1247 (10th Cir. 2010) ("[R]estitution is calculated based on the victim's loss, while forfeiture is based on the offender's gain."); *United States v. Casey*, 444 F.3d 1071, 1076 (9th Cir. 2006) ("The statute mandates that a defendant forfeit a very specific amount – the proceeds of his criminal activity.").

In addition, unlike the restitution payment in *Stephens*, which was paid directly to the victim and not "to a government," Nacchio's criminal forfeiture was paid "to the United States," as was expressly required by statute and by the judgment in Nacchio's criminal case. A144; 18 U.S.C. § 3554 and 21 U.S.C. § 853(a) (made applicable by 28 U.S.C. § 2461(c)). Thus, the court's reliance on *Stephens*, which involved *restitution paid to the victim,* and its disregard of the much more apposite cases that have consistently denied deductions for *forfeitures paid to the government* (see cases cited *supra* at 26–27), was misguided.

> **2. The Attorney General's subsequent exercise of his discretionary authority to grant remission to victims of Nacchio's crimes did not alter the character of Nacchio's criminal forfeiture as a "fine or similar penalty" under § 162(f)**

The Attorney General is authorized to use property obtained through criminal forfeiture to grant petitions for remission to victims of the underlying crime. 21 U.S.C. § 853(i)(1); 28 C.F.R. § 9.8. "The remission of forfeitures is neither a right, nor a privilege, but an act of grace." *In re Matter of $67,470*, 901 F.2d 1540, 1543 (11th Cir. 1990). Victims who have no present ownership interest in the forfeited

property must request remission by filing a petition with the

Department of Justice, 28 C.F.R. §§ 9.8(a)(1), 9.4(e), and the Attorney

General has sole, unreviewable discretion whether to grant remission or

retain the forfeited property for other authorized uses, 21 U.S.C.

§ 853(i); *United States v. Lavin*, 942 F.2d 177, 184-85 (3d Cir. 1991);

*United States v. Shefton*, 548 F.3d 1360, 1364-65 (11th Cir. 2008); *cf.* 18

U.S.C. § 981(e).

The Court of Federal Claims' determination that Nacchio's

criminal forfeiture was compensatory in nature was founded on the

Attorney General's discretionary decision, made years after Nacchio

was convicted and sentenced to forfeit his criminal proceeds, to use the

forfeited funds to grant remission to victims of Nacchio's fraud.  It was

not until Nacchio's resentencing in June 2010, almost three years after

Nacchio forfeited his criminal proceeds in August 2007, that the

prosecution informed the district court that the Government even

contemplated using the forfeited funds in the remission process, at

which time the prosecuting attorney also stated clearly that the decision

whether to do so would be "made by the Asset Forfeiture/Money

Laundering Section back in Washington pursuant to their regulations"

(A494–95); and the Attorney General's delegate did not in fact authorize remission of the funds until April 2012 (A251–54).  *See* 28 C.F.R. § 9.1(b)(2) (delegating remission authority to the Chief of the Asset Forfeiture and Money Laundering Section).  These later events have no proper bearing on Nacchio's entitlement to his claimed deduction for his *2007* tax year of the amount he was required to forfeit in that year as part of the punishment imposed for his insider trading offenses.  As the Sixth Circuit held in *Bailey v. Commissioner*, 756 F.2d 44, 47 (6th Cir. 1985), "[t]he characterization of a payment for purposes of § 162(f) turns on the origin of the liability giving rise to it."  *Accord Middle Atlantic Distributors v. Commissioner*, 72 T.C. 1136, 1144-45 (1979).  This Court's predecessor applied that principle in *Adolf Meller Co. v. United States*, 600 F.2d 1360, 1364 (Ct. Cl. 1979), where it held that, for purposes of applying § 162(f), payments in settlement of a potential liability for a fine should be "treated as though they partook of the character of the obligation which generated them."  *Id.* at 1364.

Thus, the nature of Nacchio's criminal forfeiture as punishment for his crimes was not altered by the Attorney General's subsequent (and entirely discretionary) decision to use the forfeited funds in the

remission process, nor did that decision alter the character of the forfeiture as a "fine or similar penalty" under § 162(f). By focusing on how the Government ultimately decided to use Nacchio's forfeited funds, the court improperly characterized a mandatory criminal sanction in the nature of a "fine" (*see Bajakajian*, 524 U.S. at 327-28) as being compensatory in nature. Congress clearly could not have intended to create a scheme wherein the applicability of § 162(f) to a particular fine or penalty would depend upon how the Government, in its sole discretion, later decided to use the funds generated by such fine or penalty. Indeed, under the Court of Federal Claims' faulty logic for determining deductibility based on the Government's subsequent use of the funds, even the $19 million fine imposed against Nacchio would be deductible because it was required to be placed into a Crime Victims Fund to be used to compensate victims, among other things. *See* 42 U.S.C. §§ 10601(d)(4)(A), 10602. So, too, traffic fines would fall outside § 162(f) if, for example, the jurisdiction imposing the fines made the policy decision to use the funds generated by the fines to compensate individuals injured by uninsured motorists.

47

In sum, § 162(f) and the coextensive public-policy limitation on deductions under § 165 preclude a deduction for Nacchio's criminal forfeiture payment, and the Court of Federal Claims erred in holding to the contrary.

## II

**The Court of Federal Claims also erred as a matter of law in holding that Nacchio's conviction for insider trading did not collaterally estop him from seeking to establish that he qualifies for the special tax relief afforded by § 1341[12]**

### Standard of review

Whether Nacchio's conviction for insider trading collaterally estops him from seeking to establish under I.R.C. § 1341(a)(1) that he included his insider trading proceeds in income because "it appeared

---

[12] The parties stipulated (A732) in the Court of Federal Claims that, if the court's determination that Nacchio's forfeiture is deductible for federal tax purposes is reversed on appeal, then the judgment in favor of Nacchio should be vacated, judgment should be entered in favor of the United States, and Nacchio's complaint should be dismissed with prejudice. Accordingly, in the event this Court were to reverse the Court of Federal Claims' determination that Nacchio's forfeiture was deductible, there would be no need for the Court to address the propriety of the Court of Federal Claims' further ruling that Nacchio's conviction for insider trading did not collaterally estop him from seeking to establish herein that he qualified for the special tax relief afforded by § 1341.

that [he] had an unrestricted right" to the proceeds is a question of law, reviewable *de novo*. *Shell Petroleum v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003); *Culley*, 222 F.3d 1331; *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 247-50 (3d Cir. 2006) (reconciling different standards of review that have been applied to collateral estoppel).

---

As noted, a taxpayer seeking to invoke the benefit of I.R.C. § 1341 must establish, among other things, that he included an item in income for a prior tax year because it "appeared that the taxpayer had an unrestricted right" to such item. I.R.C. § 1341(a)(1). The Supreme Court held in *James v. United States*, 366 U.S. 213 (1961), that gross income as defined in I.R.C. § 61 includes illegally obtained income, notwithstanding that a taxpayer has no claim of right to such income. "But § 1341 does not apply to all items included in gross income; it applies only to items to which it appeared the taxpayer had an unrestricted right." *Culley*, 222 F.3d at 1336. Accordingly, the fact that, under *James*, Nacchio was required to include in his income for 2001 his net gains from his illegal stock trades does not mean that he

49

included those gains in his income because it appeared that he had an unrestricted right to the gains.  On the contrary, because a taxpayer who knowingly obtains funds by unlawful means, *e.g.*, by fraud, has no claim of right to those funds, it cannot appear to such taxpayer that he has an "unrestricted right" to the funds for purposes of § 1341.  *Culley*, 222 F.3d at 1335-36; *Kraft v. United States*, 991 F.2d 292, 299 (6th Cir. 1993); *McKinney v. United States*, 574 F.2d 1240, 1243 (5th Cir. 1978).

In *Culley*, this Court held that a taxpayer who had pleaded guilty to mail fraud was not entitled to relief under § 1341 because it could not have appeared to him that he had an unrestricted right to the funds obtained through his fraud.  This Court found the reasoning of cases "denying § 1341 treatment to taxpayers who have engaged in fraudulent conduct" to be "persuasive."  222 F.3d at 1335 (collecting cases).  Acknowledging that the "appearance of an unrestricted right" means the *appearance to the taxpayer* of an unrestricted right, *see McKinney*, 574 F.2d at 1243, this Court explained that it cannot appear to a taxpayer who has knowingly obtained funds through fraud that he has an unrestricted right to those funds:

> When a taxpayer knowingly obtains funds as the result of fraudulent action, it simply cannot appear from the facts

50

> known to him at the time that he has a legitimate, unrestricted claim to the money.  When committing an intentional wrong, a taxpayer must be prepared for the eventuality of being discovered and being held liable for repayment in the form of restitution, disgorgement, civil or criminal penalties, or the like.  A taxpayer's illicit hope that his intentional wrongdoing will go undetected cannot create the appearance of an unrestricted right.

*Culley*, 222 F.3d at 1335-36 (internal citations omitted).  The Court thus held that because Mr. Culley had "intentionally engaged in fraudulent activities, it could not have appeared to him … that he had an unrestricted right to the funds received as a result of those activities." *Id*. at 1336.  The Court distinguished cases "in which an act not involving intentional wrongdoing – incorrect salary or bonus computation, mistaken distribution of estate proceeds, or erroneous partnership or trust distribution, for example – gives rise to the appearance of an unrestricted right."  *Id*.

As the Government argued below, *Culley* is controlling in this case as to Nacchio's failure to satisfy the appearance of an "unrestricted right" requirement of § 1341 because the jury's verdict in Nacchio's criminal case conclusively established that Nacchio obtained the funds in issue through his knowing and intentional fraud.  Thus, in light of the jury's finding of fraud, it could not have appeared to Nacchio that he

had an unrestricted right to the proceeds from his illegal stock sales.

The Court of Federal Claims erred as a matter of law by failing to

accord preclusive effect to the jury's determination that Nacchio

"willfully" violated the securities laws, *see* 15 U.S.C. § 78ff, and then by

allowing him to collaterally attack the jury's verdict in his criminal case

through relitigation herein of the central disputed issue in his criminal

case, *i.e.*, the issue of his scienter (or "subjective belief," as the court put

it) at the time of the fraudulent stock sales.  *See Taylor v. Sturgell*, 553

U.S. 880, 892 (2008) (the doctrine of collateral estoppel, or issue

preclusion, bars "successive litigation of an issue of fact or law actually

litigated and resolved in a valid court determination essential to the

prior judgment.").

### A.   The Court of Federal Claims erred by failing to give preclusive effect to the jury's determination that Nacchio "willfully" committed securities fraud

"It is well established that a prior criminal conviction may work

an estoppel in favor of the Government in a subsequent civil

proceeding." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S.

558, 568 (1951); *see also* Restatement (Second) of Judgments § 85.

Furthermore, "[i]n the case of a criminal conviction based on a jury

verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment" for estoppel purposes. *Emich Motors*, 340 U.S. at 569. As discussed below, the Court of Federal Claims' conclusion that the jury in Nacchio's criminal case was not required to determine his subjective belief as to the legality of his Qwest stock sales in order to convict him of willfully violating the securities laws was plainly incorrect. That Nacchio must have acted with the requisite *mens rea* was essential to the jury's guilty verdict. Indeed, the instructions to the jury establish unequivocally that the jury was required to acquit Nacchio unless it found, beyond a reasonable doubt, that he violated the insider trading laws "willfully, knowingly, and with the intent to defraud."

### 1. The jury was required to determine Nacchio's state of mind at the time of the fraudulent stock sales in order to convict him of securities fraud

It is a basic tenet of criminal law that, as a general matter, "wrongdoing must be conscious to be criminal." *Morissette v. United States*, 342 U.S. 246, 252 (1952); *id.* at 251-52 ("Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense

individualism and took deep and early root in American soil."); *Smith v. California*, 361 U.S. 147, 150 (1959) ("[T]he existence of a *mens rea* ["guilty mind"] is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence."). *See generally* C. Torcia, Wharton's Criminal Law § 27 (15th ed. 1993) ("The mental state"). Congress, in criminalizing certain conduct, "has been alert to what often is a decisive function of some mental element in crime" and "has seen fit to prescribe that an evil state of mind, described variously in one or more such terms as 'intentional,' 'wilful,' 'knowing,' 'fraudulent' or 'malicious,' will make criminal an otherwise indifferent act." *Morissette*, 342 U.S. at 264. The Supreme Court has thus confirmed the "general principle that where scienter is required no crime is committed absent the requisite state of mind." *Gonzales v. Carhart*, 550 U.S. 124, 148 (2007).

a.    Nacchio was convicted of securities fraud under 15 U.S.C. §§ 78j and 78ff. (A36–40, A45–56.) These statutes make it "unlawful" for anyone to use "in connection with the purchase or sale of any security … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and

Exchange] Commission may prescribe." 15 U.S.C. § 78j(b).[13] Those

rules and regulations, in turn, prohibit insider trading on the basis of

material, nonpublic information. 17 C.F.R. §§ 240.10b-5 and 240.10b5-

1(a). "Trading on such information qualifies as a 'deceptive device'

under [15 U.S.C. § 78j(b)] because a relationship of trust and confidence

exists between the shareholders of a corporation and those insiders who

have obtained confidential information by reason of their position with

that corporation." *United States v. O'Hagan*, 521 U.S. 642, 652 (1997).

15 U.S.C. § 78ff(a) provides that "[a]ny person who willfully violates any

provision of this chapter … shall upon conviction be fined" or

"imprisoned" or "both," "but no person shall be subject to imprisonment

under this section for the violation of any rule or regulation if he proves

that he had no knowledge of such rule or regulation."

The Supreme Court has interpreted these statutes to require "the

presence of culpable intent" as "a necessary element of the offense" of

insider trading. *O'Hagan*, 521 U.S. at 666. In *O'Hagan*, the Court

upheld a defendant's convictions for insider trading based on a

---

[13] 15 U.S.C. § 78j(b) is the codification of § 10(b) of the Securities
Exchange Act of 1934, Pub. L. No. 73-291, 48 Stat. 881.

"misappropriation theory."  The defendant, who was an attorney for a law firm, was convicted for trading stock of a corporate client on the basis of inside information he had received during the firm's legal representation of the client.  In sustaining criminal liability under the misappropriation theory, the Court emphasized what it referred to as "two sturdy safeguards" that "Congress has provided regarding scienter" in insider trading cases:

> To establish a criminal violation of Rule 10b-5, the Government must prove that a person "*willfully*" violated the provision.  See 15 U.S.C. § 78ff(a).  Furthermore, a defendant may not be imprisoned for violating Rule 10b-5 if he proves that he had no *knowledge* of the Rule.  See *ibid.*

521 U.S. at 665-66 (emphases added).  *Cf. Bryan v. United States*, 524 U.S. 184, 191 (1998) (explaining that the word "willfully" in the criminal context "typically refers to a culpable state of mind").

Similarly, in *Aaron v. SEC*, 446 U.S. 680, 695 (1980), the Supreme Court held that "scienter" is a "necessary element of a violation of [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]," the provisions under which Nacchio was convicted.  The Court defined "scienter" in the securities fraud context to mean "a mental state embracing intent to deceive, manipulate, or defraud."  *Id.* at 686 n.5.  The Court reasoned that the

terms "manipulative," "device," and "contrivance" that are used in 15 U.S.C. § 78j(b), as well as the statute's legislative history, "quite clearly evince[ ] a congressional intent to proscribe only knowing or intentional misconduct." *Id.* at 690.

These Supreme Court precedents plainly establish that fraudulent intent is a necessary element to a conviction of insider trading, requiring the fact finder to adjudicate the mental state of the accused. *Morissette*, 342 U.S. at 274 ("Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury."). Nacchio's conviction should therefore have been regarded by the Court of Federal Claims as an adjudication by the jury that Nacchio possessed the requisite fraudulent intent when he "willfully" committed the crime of insider trading. *Emich Motors*, 340 U.S. at 569 ("In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment.").

b.    The district court's instructions to the jury confirm that the jury was charged with adjudicating Nacchio's state of mind in his criminal case. *See Emich Motors*, 340 U.S. at 569 (for estoppel

57

purposes, issues determined by a previous criminal judgment are to be

determined through the record of the case, including "the instructions

under which the jury arrived at its verdict"); *Caldera v. Northrop*

*Worldwide Aircraft Svs., Inc.*, 192 F.3d 962, 971-72 (Fed. Cir. 1999)

(examining the jury instructions to determine what issues were

necessarily adjudicated in a criminal case for purposes of applying

collateral estoppel).  The jury in Nacchio's criminal case was specifically

instructed that it could convict Nacchio only if it found, beyond a

reasonable doubt, that he violated the securities laws "willfully,

knowingly, and with the intent to defraud," as the court defined those

terms (A92–95):

> You will note that I have referred at several points to a
> requirement that the defendant act knowingly and/or
> willfully.  This requirement refers to the state of mind which
> accompanies the defendant.  This is a critical requirement
> because our system of justice does not usually criminalize
> acts which are simple mistakes or even ones which are
> careless.  There must be something more than carelessness
> or mistake.  Specifically in this case, as I said before, the
> second element of the securities fraud violation in this
> context is that the defendant must have committed these
> acts willfully, knowingly and with the intent to defraud.
>
> I will now define what I mean by these terms.
>
> An intent to defraud or an intent to deceive, manipulate or
> defraud is established if the Government proves beyond a

reasonable doubt that the defendant acted knowingly with the intention or purpose to deceive or cheat.

To act willfully means to act voluntarily and purposefully with the specific intent to do something which the law forbids.  That is to say, with bad purpose, to disobey, or disregard the law.

The term "knowingly" as used in these instructions to describe the alleged state of mind of the defendant means that he was conscious and aware of his action, realized what he was doing or what was happening around him, and did not act because of ignorance or mistake or accident or carelessness.

\* \* \* \* \* \*

If the evidence in the case leaves you with a reasonable doubt as to whether Mr. Nacchio acted with the intent to defraud … then you must acquit him.

The jury was further instructed that "good faith," which entailed "a

belief or opinion honestly held [or] an absence of an intention to

defraud," on the part of Nacchio would be a complete defense to the

charge of securities fraud.  (A93–94.)  These instructions were upheld

and approved by the Tenth Circuit in Nacchio's appeal of his conviction.

*Nacchio*, 519 F.3d at 1164-66.[14]

---

[14] This aspect of the Tenth Circuit panel's opinion remained in effect when that court, sitting *en banc*, reversed the portion of the panel's decision that had reversed Nacchio's conviction based on the

(continued...)

Accordingly, because it necessarily was determined by the jury in Nacchio's criminal case that Nacchio obtained the stock proceeds in issue by means of fraudulent conduct, the doctrine of collateral estoppel bars his attempt here to establish the contrary, *i.e.*, that he made the stock trades in good faith and did not knowingly make those trades in violation of the insider trading laws.

> **2.    It was not necessary that the jury's adjudication of Nacchio's state of mind be based on, or be informed by, Nacchio's own trial testimony or confession of guilt**

The Court of Federal Claims improperly concluded that the jury could not have adjudicated Nacchio's "subjective belief" because Nacchio chose not to testify at his criminal trial. In particular, the court's conclusion that "[a]lthough the jury in the criminal trial believed Mr. Nacchio was guilty of willfully engaging in insider trading, this does not equate to a finding of what Mr. Nacchio himself believed" (A11) (emphasis in original) is simply unprecedented and is clearly incorrect. It was not necessary that the jury's adjudication of Nacchio's state of

---

(…continued)

exclusion of his proffered expert witness. *See Nacchio*, 555 F.3d at 1236.

mind be based on, or be informed by, Nacchio's own trial testimony or confession of guilt. "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). As one court aptly noted in a securities fraud case, "[o]rdinarily, of course, one who engages in [fraudulent conduct] does not proclaim his intent to defraud innocent victims." *United States v. Smallwood*, 443 F.2d 535, 541 (8th Cir. 1971).

In *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the Supreme Court reiterated its teaching that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." 539 U.S. at 100 (quoting *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 508 (1957)). The Court went on to explain in that case that "[t]he adequacy of circumstantial evidence also extends beyond civil cases; we have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required…. And juries are routinely instructed that 'the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.'" *Id.*

(citing, *inter alia*, *Holland v. United States*, 348 U.S. 121, 140 (1954) (observing that, in criminal cases, circumstantial evidence is "intrinsically no different from testimonial evidence")).

Accordingly, the necessary element of fraudulent intent for a securities fraud conviction may be established through circumstantial evidence, regardless whether the accused chooses to testify. The Tenth Circuit, in which Nacchio was convicted, has expressly so held. *United States v. Wenger*, 427 F.3d 840, 854 (10th Cir. 2005) ("Fraudulent intent is an element of a [15 U.S.C. § 78j(b)] offense [that] need not be proven directly, but may be inferred from the facts and circumstances surrounding a defendant's actions."). Indeed, in Nacchio's own appeal of his conviction to the Tenth Circuit, he argued that there was insufficient evidence for the jury to find that he acted with fraudulent intent in violating the securities laws. *Nacchio*, 519 F.3d at 1164-67. But, after reviewing the evidence presented at his trial, the Tenth Circuit rejected Nacchio's argument, concluding that "[t]he evidence at trial was enough for the jury *to infer* that Mr. Nacchio acted with the purpose to disobey the law or the knowledge that he was doing so." *Id.* at 1166-67 (emphasis added). The Tenth Circuit's holding in Nacchio's

own appeal thus establishes that his personal testimony was not necessary in order for the jury to adjudicate his state of mind or "subjective belief," which the jury appropriately inferred from indirect or circumstantial evidence.[15]

Nacchio's decision not to testify at his criminal trial cannot defeat application of the doctrine of collateral estoppel. The courts have uniformly rejected the argument that a defendant's choice not to testify in his criminal trial for Fifth Amendment reasons somehow deprives him of a full and fair opportunity to litigate the criminal case for

---

[15] The district court properly instructed the jury that it could infer Nacchio's state of mind at the time of the stock sales through circumstantial evidence because "there is no way directly of scrutinizing the workings of the human mind" (A95):

> The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way directly of scrutinizing the workings of the human mind.

> In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done by that person, and you may consider all other facts and circumstances received in evidence which logically may aid you in determining that person's state of mind, or that person's knowledge, or that person's intent.

collateral estoppel purposes. *E.g.*, *Samirah v. Sabhnani*, 772 F. Supp. 2d 437, 443-44 (E.D.N.Y. 2011) (explaining that "the defendants obviously had more to lose in the criminal case than they do in a civil proceeding, but nevertheless chose to remain silent when the stakes were highest"); *In re Brown*, 427 B.R. 715, 722 (D. Minn. 2010); *SEC v. Grossman*, 887 F. Supp. 649, 659 (S.D.N.Y. 1995), *aff'd* 101 F.3d 109 (2d Cir. 1996); *Anderson v. Janovich*, 543 F. Supp. 1124, 1130-32 (W.D. Wash. 1982); *Stewart v. Bader*, 907 A.2d 931, 938 (N.H. 2006) ("A handful of courts in other jurisdictions have addressed the issue, and have all decided that a criminal defendant's decision not to testify at his criminal trial does not deprive him of a full and fair opportunity to litigate the issues in that trial.") (surveying cases).  There is simply no authority – and the Court of Federal Claims cited none – for the court's anomalous ruling that a criminal conviction for an offense requiring fraudulent intent has no collateral estoppel effect in a later civil proceeding if the defendant chose not to testify in his criminal case.

### B.    The Court of Federal Claims improperly distinguished this Court's decision in *Culley*

The Court of Federal Claims improperly distinguished this Court's decision in *Culley* on the ground that the taxpayer there pleaded guilty,

whereas "Mr. Nacchio did not plead guilty to insider trading" but instead "professed his innocence."[16] (A11.) But this Court's decision in *Culley* did not turn on the fact that the taxpayer there pleaded guilty instead of being convicted by a jury after a trial. The focus of the Court's analysis in *Culley* was on the taxpayer's "intentional wrongdoing" that belied his claim of the appearance of an unrestricted right to the fraudulently obtained funds. 222 F.3d at 1335-36. Indeed, if anything, a conviction after trial cuts more strongly in favor of the application of collateral estoppel than does a guilty plea. Some courts refuse even to give preclusive effect to a guilty plea, reasoning that the elements underlying the offense were never actually litigated. *See State*

---

[16] During argument on the Government's motion for reconsideration, the court confirmed its view that *Culley* is distinguishable because the taxpayer there pleaded guilty whereas Nacchio was convicted by a jury (A661–62):

> THE COURT: Now, the "knowingly" in *Culley* though, referred to a taxpayer unlike Mr. Nacchio who had pled guilty, so of course it was "knowingly," and not only did the jury know it, he knew it. That's why I have trouble applying *Culley*. It's not really on all fours here. I think there's a rather large distinction when someone pleads guilty and a jury infers guilt from circumstantial evidence or infers the knowing element of guilt.

*Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 380-81 (5th Cir. 1997) (listing cases); Restatement (Second) of Judgments § 85, comment b. But there can be no question that a conviction following a full-blown jury trial may be accorded preclusive effect in a subsequent civil action. *Emich Motors*, 340 U.S. at 568-69; Restatement (Second) of Judgments § 85; Jonathan C. Thau, *Collateral Estoppel and the Reliability of Criminal Determinations*, 70 Geo. L. J. 1079, 1099 (1982) (explaining that estoppel based on a criminal conviction following trial "unquestionably is sound" because a criminal defendant benefits from "a vast array of procedural protections that should inspire confidence in the reliability of the outcomes"). Thus, the fact that Nacchio's conviction was based on a jury verdict after a 16-day trial serves only to strengthen the Government's reliance on *Culley*.

As we have demonstrated, the jury in Nacchio's criminal case determined, as an essential element of Nacchio's insider trading crimes, that Nacchio violated the insider trading laws "willfully, knowingly, and with the intent to defraud," as each of those terms was specifically defined to the jury. The jury's determination in this respect easily satisfies the "intentional wrongdoing" standard established by this

Court in *Culley* that will defeat a § 1341 claim. *See Aaron*, 446 U.S. at

690 (the securities laws "quite clearly evince[ ] a congressional intent to

proscribe only '*knowing or intentional misconduct*'") (emphasis added);

*O'Hagan*, 521 U.S. at 666 ("culpable intent [is] a necessary element of

the offense" of insider trading); *see also Wang v. Commissioner*, T.C.

Memo. 1998-389 (no appearance of an unrestricted right to profits from

sale of insider information in violation of the securities laws). Thus,

under *Culley*, the jury's determination as to Nacchio's fraudulent intent

forecloses, as a matter of law, any contrary finding that Nacchio

subjectively believed he had an "unrestricted right" to the proceeds of

his illegal stock sales for purposes of § 1341. There is no basis on which

Nacchio can avoid this Court's holding in *Culley* that § 1341 relief is not

available to a taxpayer who is required to repay funds he obtained

through intentional wrongdoing. The ruling of the Court of Federal

Claims allowing Nacchio to relitigate the issue of his fraudulent intent

is unfounded and contravenes the fundamental purpose of the collateral

estoppel doctrine.

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims should be reversed and the case remanded with instructions that judgment should be entered in favor of the United States.

Respectfully submitted,

CAROLINE D. CIRAOLO
  *Acting Assistant Attorney General*

DIANA L. ERBSEN
  *Deputy Assistant Attorney General*

/s/ Jacob Christensen

| | |
|---|---|
| GILBERT S. ROTHENBERG | (202) 514-3361 |
| RICHARD FARBER | (202) 514-2959 |
| JACOB EARL CHRISTENSEN | (202) 307-0878 |

  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*
  Appellate.TaxCivil@usdoj.gov
  Jacob.E.Christensen@usdoj.gov

SEPTEMBER 2015

# STATUTORY AND REGULATORY ADDENDUM

## 1. 26 U.S.C. § 162 (2007):

**§ 162. Trade or business expenses**

**(a) In general**

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \*

**(f) Fines and penalties**

No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law.

## 2. 26 U.S.C. § 165 (2007):

**§ 165. Losses**

**(a) General rule**

There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \*

**(c) Limitation on losses of individuals**

In the case of an individual, the deduction under subsection (a) shall be limited to—

(1) losses incurred in a trade or business;

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and

(3) except as provided in subsection (h), losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.

## 3. 26 U.S.C. § 1341 (2007):

### § 1341. Computation of tax where taxpayer restores substantial amount held under claim of right

**(a) General rule.** If—

>    (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;
>    (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and
>    (3) the amount of such deduction exceeds $3,000,

then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

>    (4) the tax for the taxable year computed with such deduction; or
>    (5) an amount equal to—
>     (A) the tax for the taxable year computed without such deduction, minus
>     (B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

For purposes of paragraph (5)(B), the corresponding provisions of the Internal Revenue Code of 1939 shall be chapter 1 of such code (other than subchapter E, relating to self-employment income) and subchapter E of chapter 2 of such code.

**(b) Special rules**

   (1) If the decrease in tax ascertained under subsection (a)(5)(B) exceeds the tax imposed by this chapter for the taxable year (computed without the deduction) such excess shall be considered to be a payment of tax on the last day prescribed by law for the payment of tax for the taxable year, and shall be refunded or credited in the same manner as if it were an overpayment for such taxable year.

* * * * *

## 4.  28 U.S.C. § 2461 (2007):

### § 2461. Mode of recovery

(a) Whenever a civil fine, penalty or pecuniary forfeiture is prescribed for the violation of an Act of Congress without specifying the mode of recovery or enforcement thereof, it may be recovered in a civil action.

(b) Unless otherwise provided by Act of Congress, whenever a forfeiture of property is prescribed as a penalty for violation of an Act of Congress and the seizure takes place on the high seas or on navigable waters within the admiralty and maritime jurisdiction of the United States, such forfeiture may be enforced by libel in admiralty but in cases of seizures on land the forfeiture may be enforced by a proceeding by libel which shall conform as near as may be to proceedings in admiralty.

(c) If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to to[1] the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code. The procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding, except that subsection (d) of such section applies only in cases in which the defendant is convicted of a violation of such Act.

## 5.  Treas. Reg. (26 C.F.R.) § 1.162-21 (2007):

### § 1.162-21.  Fines and penalties.

(a) *In general*. No deduction shall be allowed under section 162(a) for any fine or similar penalty paid to—

(1) The government of the United States, a State, a territory or possession of the United States, the District of Columbia, or the Commonwealth of Puerto Rico;

(2) The government of a foreign country; or

(3) A political subdivision of, or corporation or other entity serving as an agency or instrumentality of, any of the above.

(b) *Definition*. (1) For purposes of this section a fine or similar penalty includes an amount—

(i) Paid pursuant to conviction or a plea of guilty or *nolo contendere* for a crime (felony or misdemeanor) in a criminal proceeding;

(ii) Paid as a civil penalty imposed by Federal, State, or local law, including additions to tax and additional amounts and assessable penalties imposed by chapter 68 of the Internal Revenue Code of 1954;

(iii) Paid in settlement of the taxpayer's actual or potential liability for a fine or penalty (civil or criminal); or

(iv) Forfeited as collateral posted in connection with a proceeding which could result in imposition of such a fine or penalty.

(2) The amount of a fine or penalty does not include legal fees and related expenses paid or incurred in the defense of a prosecution or civil action arising from a violation of the law imposing the fine or civil penalty, nor court costs assessed against the taxpayer, or stenographic and printing charges. Compensatory damages (including damages under section 4A of the Clayton Act (15 U.S.C. 15a), as amended) paid to a government do not constitute a fine or penalty.

(c) *Examples*. The application of this section may be illustrated by the following examples:

*Example 1*. M Corp. was indicted under section 1 of the Sherman Anti–Trust Act (15 U.S.C. 1) for fixing and maintaining prices of certain electrical products. M Corp. was convicted and was fined $50,000. The United States sued M Corp. under section 4A of the Clayton Act (15 U.S.C. 15a) for $100,000, the amount of the actual damages resulting from the price fixing of which M Corp. was convicted. Pursuant to a final judgment entered in the civil action, M Corp. paid the United States $100,000 in damages. Section 162(f) precludes M Corp. from deducting the fine of $50,000 as a trade or business expense. Section 162(f) does not preclude it from deducting the $100,000 paid to the United States as actual damages.

*Example 2*. N Corp. was found to have violated 33 U.S.C. 1321(b)(3) when a vessel it operated discharged oil in harmful quantities into the navigable waters of the United States. A civil penalty under 33 U.S.C. 1321(b)(6) of $5,000 was assessed against N Corp. with respect to the discharge. N Corp. paid $5,000 to the Coast Guard in payment of the civil penalty. Section 162(f) precludes N Corp. from deducting the $5,000 penalty.

*Example 3*. O Corp., a manufacturer of motor vehicles, was found to have violated 42 U.S.C. 1857f–2(a)(1) by selling a new motor vehicle which was not covered by the required certificate of conformity. Pursuant to 42 U.S.C. 1857f–4, O Corp. was required to pay, and did pay, a civil penalty of $10,000. In addition, pursuant to 42 U.S.C. 1857f–5a(c)(1), O Corp. was required to expend, and did expend, $500 in order to remedy the nonconformity of that motor vehicle. Section 162(f) precludes O Corp. from deducting the $10,000 penalty as a trade or business expense, but does not preclude it from deducting the $500 which it expended to remedy the nonconformity.

*Example 4*. P Corp. was the operator of a coal mine in which occurred a violation of a mandatory safety standard prescribed by the Federal Coal Mine Health and Safety Act of 1969 (30 U.S.C. 801 et seq.). Pursuant to 30 U.S.C. 819(a), a civil penalty of $10,000 was assessed against P Corp., and P Corp. paid the penalty. Section 162(f) precludes P Corp. from deducting the $10,000 penalty.

*Example 5*. Q Corp., a common carrier engaged in interstate commerce by railroad, hauled a railroad car which was not equipped with efficient hand brakes, in violation of 45 U.S.C. 11. Q Corp. was found to be liable for a penalty of $250 pursuant to 45 U.S.C. 13. Q Corp. paid that penalty. Section 162(f) precludes Q Corp. from deducting the $250 penalty.

*Example 6*. R Corp. owned and operated on the highways of State X a truck weighing in excess of the amount permitted under the law of State X. R Corp. was found to have violated the law and was assessed a fine of $85 which it paid to State X. Section 162(f) precludes R Corp. from deducting the amount so paid.

*Example 7*. S Corp. was found to have violated a law of State Y which prohibited the emission into the air of particulate matter in excess of a limit set forth in a regulation promulgated under that law. The Environmental Quality Hearing Board of State Y assessed a fine of $500 against S Corp. The fine was payable to State Y, and S Corp. paid it. Section 162(f) precludes S Corp. from deducting the $500 fine.

*Example 8*. T Corp. was found by a magistrate of City Z to be operating in such city an apartment building which did not conform to a provision of the city housing code requiring operable fire escapes on apartment buildings of that type. Upon the basis of the magistrate's finding, T Corp. was required to pay, and did pay, a fine of $200 to City Z. Section 162(f) precludes T Corp. from deducting the $200 fine.

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing brief with the
Clerk of the Court for the United States Court of Appeals for the
Federal Circuit by using the appellate CM/ECF system on this 15th day
of September 2015.  Counsel for the cross-appellants are registered ECF
users and will be served by the ECF system.

/s/ Jacob Christensen
JACOB EARL CHRISTENSEN
    *Attorney*

# CERTIFICATE OF COMPLIANCE

## With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[X]   this brief contains 13,995 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]   this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]   this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook, *or*

[ ]   this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

(s)   /s/ Jacob Christensen
Attorney for the United States

Dated:  September 15, 2015