# United States Court of Appeals for the Federal Circuit

---

**JOSEPH P. NACCHIO, ANNE M. ESKER,**
*Plaintiffs-Cross-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2015-5114, 2015-5115

---

Appeals from the United States Court of Federal Claims in No. 1:12-cv-00020-MCW, Judge Mary Ellen Coster Williams.

---

Decided: June 10, 2016

---

THOMAS A. GENTILE, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Florham Park, NJ, argued for plaintiffs-cross-appellants. Also represented by WILLIAM D. LIPKIND, Lampf, Lipkind, Prupis & Petigrow PC, West Orange, NJ

JACOB EARL CHRISTENSEN, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by CAROLINE D. CIRAOLO, DIANA L. ERBSEN, GILBERT STEVEN ROTHENBERG, RICHARD FARBER.

---

Before O'MALLEY, CLEVENGER, and BRYSON, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

This is a tax case arising out of a criminal conviction for insider trading.  Joseph P. Nacchio and Anne M. Esker ("Nacchio")[1] filed this action in the Court of Federal Claims seeking an income tax credit of $17,974,832 for taxes paid on trading profits of $44,632,464.38, which Nacchio was later ordered to forfeit to the United States following his conviction for insider trading with respect to those profits.  The government opposed Nacchio's request, contending that his forfeiture payment was a non-deductible penalty or fine and that he was estopped from seeking tax relief because of his criminal conviction.  The parties filed cross-motions for summary judgment.

The Court of Federal Claims denied the government's motion for summary judgment and granted Nacchio's cross-motion for partial summary judgment, holding that: (1) Nacchio may deduct his criminal forfeiture payment under Internal Revenue Code (I.R.C.)[2] § 165, but not under I.R.C. § 162; and (2) Nacchio is not collaterally estopped from pursuing special tax relief under I.R.C. § 1341.  Rather than proceed to trial on Nacchio's claim for special relief under I.R.C. § 1341, the government stipulated to the entry of final judgment in favor of

---

[1]    We refer to Joseph Nacchio alone as the "taxpayer" for purposes of this appeal.  Anne Esker, Nacchio's spouse, is a party to this case by virtue of having filed a joint income tax return with Nacchio for tax year 2007.  She does not, however, have a separate or independent interest in the refund claim at issue.

[2]    The Internal Revenue Code is codified at Title 26 of the United States Code.

Nacchio, waiving its right to challenge Nacchio's claims under § 1341 on other than deductibility and estoppel grounds; the government expressly reserved its right to appeal the court's adverse rulings on those issues. Nacchio reserved his right to appeal the court's adverse ruling as to deductibility under § 162.

The government filed this appeal on the grounds reserved in the parties' stipulation. Nacchio filed a cross-appeal. We find that Nacchio has failed to establish that his criminal forfeiture was not a "fine or similar penalty" and, therefore, reverse the court's judgment of deductibility under § 165. We affirm the court's judgment of non-deductibility under § 162. Because establishing deductibility under another section of the tax code is a prerequisite to pursuing special relief under § 1341, Nacchio cannot pursue a deduction under § 1341. Judgment must be entered in favor of the government.

BACKGROUND

A. Nacchio's Insider Trading Conviction

From 1997 to 2001, Nacchio served as Chief Executive Officer ("CEO") of Qwest Communications International, Inc. ("Qwest"). *Nacchio v. United States*, 115 Fed. Cl. 195, 197 (Fed. Cl. 2014). As part of his compensation for serving as Qwest's CEO, Nacchio received options to purchase shares of Qwest stock. *Id.* at 197-98. When Qwest opened a "trading window" in April 2001, Nacchio exercised his options to purchase, and then "sold 1,255,000 shares of Qwest stock." *Id.* On May 16, 2001, Nacchio entered into an automatic sales plan to sell his Qwest stock, and he sold his stock until May 29, 2001, the day before the price of Qwest stock fell below $38 per share. *Id.* Nacchio reported a net gain from these stock sales of $44,632,464.38 in his 2001 joint tax return and paid $17,974,832 in taxes on this gain. *Id.*

In 2005, a federal grand jury indicted Nacchio on forty-two counts of insider trading. *United States v. Nacchio*, No. 05-cr-00545-EWN, 2007 U.S. Dist. LEXIS 54655, at *2 (D. Colo. July 27, 2007). The indictment alleged that Nacchio "did knowingly and willfully sell . . . more than $100 million worth of Qwest common stock" in 2001 "while [he was] aware of and on the basis of material, non-public information," in violation of 15 U.S.C. §§ 78j, 78ff, and SEC Rules 10b-5 and 10b-5-1 (17 C.F.R. §§ 240.10b-5, 240.10b5-1). Government's Mot. Summ. J. Ex. 1, Dkt. 17 at 3-5, *Nacchio*, 115 Fed. Cl. 195 (No. 1:12-cv-00020), ECF No. 17. The indictment also included criminal forfeiture allegations, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), which would require Nacchio, if convicted, to forfeit to the United States the proceeds of his insider trading offenses. Joint Appendix ("J.A.") 41-42.

In April 2007, a jury found Nacchio guilty on nineteen of forty-two counts of insider trading. *Nacchio*, 2007 U.S. Dist. LEXIS 54655, at *2. The district court sentenced Nacchio to serve 72 months in prison, pay a 19 million dollar fine, and forfeit the gross income of $52,007,545.47 that Nacchio derived as a result of the insider trading. *Id.*

On March 17, 2008, a three judge panel of the Tenth Circuit reversed Nacchio's conviction and sentence. *United States v. Nacchio,* 519 F.3d 1140, 1169 (10th Cir. 2008). Specifically, the court held that the district court erred in excluding expert testimony that Nacchio had sought to introduce at trial. *Id.* at 1149-50. The Tenth Circuit then granted the government's petition for rehearing en banc and reinstated Nacchio's conviction, holding that the expert testimony was properly excluded. *See United States v. Nacchio*, 555 F.3d 1234, 1239 (10th Cir. 2009) (en banc). The en banc court remanded the matter to the panel for further proceedings on Nacchio's challenge to his sentence. *Id.*

On remand, the initial decisional panel upheld most aspects of the original sentence, but concluded that 18 U.S.C. § 981(a)(2)(B), rather than 18 U.S.C. § 981(a)(2)(A), applied to calculate the amount that Nacchio was required to forfeit. *United States v. Nacchio*, 573 F.3d 1062, 1088-90 (10th Cir. 2009). Specifically, the panel held that the district court had "applied the wrong legal framework" when it imposed a forfeiture amount representing the "gross proceeds" from Mr. Nacchio's sales of Qwest stock, rather than a forfeiture amount "that more closely approximates Mr. Nacchio's gain *resulting from the offense* of insider trading." *Id.* at 1087-90 (emphasis in original). The panel remanded the case to the district court for resentencing.

On June 24, 2010, the district court resentenced Nacchio to serve 70 months in prison, pay a 19 million dollar fine, and forfeit the net proceeds from his insider trading—$44,632,464.38. J.A. 140-48. At the conclusion of the resentencing hearing, Nacchio's attorney inquired whether the district court would "direct that the [forfeited] money go to a fund . . . set up for distribution to [Nacchio's] victims." J.A. 494-95. In response, the prosecutor advised the court that "the Government's intention is for . . . the forfeiture funds[ ] to be used to compensate victims," but that the decision would be made by the Asset Forfeiture and Money Laundering Section ("AFMLS") in Washington pursuant to its regulations. *Id.*

In January 2011, Nacchio entered into a settlement of a concurrent action against him by the Securities and Exchange Commission. The settlement required that Nacchio disgorge the sum of $44,632,464, less any amounts forfeited and paid to the United States by Nacchio in connection with his criminal case. Nacchio's criminal forfeiture thus satisfied his disgorgement obligation in the SEC civil action. Nacchio's forfeited gain was subject to remission, pursuant to 18 U.S.C. § 981(e)(6). Thus, in September of 2011, the remission administrator

retained by the Department of Justice ("DOJ") notified prior participants in private securities class action litigation or SEC civil litigation concerning Qwest stock that they were eligible to receive a remission from Nacchio's forfeiture.  J.A. 508.  In April of 2012, the Chief of the AFMLS authorized remission of the forfeited funds to eligible victims of Nacchio's fraud.  J.A. 251-54.

### B.  Governing Provisions of the Tax Code

Section 1341 provides special relief to a taxpayer who is required to restore funds to a third party where the taxpayer included the funds in his income in a prior taxable year when it then "appeared that the taxpayer had an unrestricted right" to the funds.  I.R.C. § 1341.  Thus, a taxpayer must establish that *he* reasonably believed he had an unrestricted right to the funds at issue at the time he included those funds in his income.  *See McKinney v. United States*, 574 F.2d 1240, 1243 (5th Cir. 1978).  We have said that where a taxpayer knowingly obtains funds by fraudulent means, "it simply cannot appear from the facts known to him at the time that he has a legitimate, unrestricted claim to the money."  *Culley v. United States*, 222 F.3d 1331, 1335 (Fed. Cir. 2000).  As a prerequisite to relief under § 1341, the taxpayer must also establish that he is "entitled to a deduction (in excess of $3,000) under another section of the Internal Revenue Code for the loss."  *Culley*, 222 F.3d at 1333; *see also Griffiths v. United States*, 54 Fed. Cl. 198, 202 (Fed. Cl. 2002) ("Section 1341 does not independently create a deduction.") (citation omitted).

Section 165(a) provides for the deduction of "any loss sustained during the taxable year and not compensated for by insurance or otherwise."  I.R.C. § 165(c) provides limitations on losses of individuals.  Section 165(c)(2) provides for the deduction of "losses incurred in any transaction entered into for profit, though not connected with a trade or business."

We agree with the parties that § 165 is subject to a "frustration of public policy" doctrine. Under this doctrine, a taxpayer cannot deduct a loss where its allowance "would frustrate sharply defined national or state policies proscribing particular types of conduct, evidenced by some governmental declaration thereof." *Tank Truck Rentals v. Comm'r*, 356 U.S. 30, 33-36 (1958) (citing *Comm'r v. Heininger*, 320 U.S. 467, 473-74 (1943)). In *Tank Truck Rentals*, the Supreme Court upheld the disallowance of a deduction for fines paid by a trucking company for violations of state maximum weight laws, observing that "[w]here a taxpayer has violated a federal or a state statute and incurred a fine or penalty he has not been permitted a tax deduction for its payment." *Id.* at 34. We agree with the government, moreover, that prior to 1969, the deduction of trade or business expenses under § 162(a) was limited by the same public policy doctrine that precluded loss deductions under § 165 when their allowance would frustrate sharply defined public policies. Section 162(a) provides for deductions of "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business."

In 1969, Congress codified the "frustration of public policy" doctrine as part of the Tax Reform Act of 1969, Pub. L. No. 91-172, § 902(a), 83 Stat. 487, 710, in the form of I.R.C. § 162(f). Section 162(f) provides: "FINES AND PENALTIES.—No deduction shall be allowed under subsection (a) for any *fine or similar penalty* paid to a government *for the violation of any law*." I.R.C. § 162(f) (emphases added). Although the amendments to § 162 did not explicitly affect § 165, the "frustration of public policy" doctrine has continuing vitality with respect to § 165. *See Stephens v. Comm'r*, 905 F.2d 667, 671 (2d Cir. 1990) ("Although *Tellier* and *Tank Truck Rentals* were both decided pursuant to Tax Code provisions relating to business expenses, the test for nondeductibility enunciated in those opinions is applicable to loss deductions under

Section 165."). *See also Wood v. United States*, 863 F.2d 417, 421 (5th Cir. 1989) (holding that "it is easy to sustain a public policy rationale for denying a loss deduction" sought under § 165); *Medeiros v. Comm'r*, 77 T.C. 1255, 1261 n.7 (1981) ("we cannot ascribe to Congress the intent, in enacting section 162(f), to disallow the deduction of this penalty under section 162(a) but to allow it as a loss deduction under section 165(a)"); Treas. Reg. (26 C.F.R.) § 1.165-1(a) (loss deductions under § 165(a) are "subject to any provision of the internal revenue laws which prohibits or limits the amount of the deduction"). The *Stephens* Court, thus, looked to § 162(f) when interpreting the scope of permissible loss deductions under § 165. We do the same.

## C. Nacchio's Tax Credit Claim

In 2009, following Nacchio's forfeiture, Nacchio amended his 2007 tax return, claiming a $17,999,030 credit pursuant to I.R.C. § 1341. This amount represented the amount of tax Nacchio and his wife had paid on the profits attributable to Nacchio's exercise of Qwest options. In a letter dated September 3, 2009, the Internal Revenue Service ("IRS") disallowed Nacchio's credit, explaining that § 1341 may be invoked only after the right to claim a deduction is established elsewhere in the tax code. The IRS found, however, that Nacchio's forfeiture was "the payment of a penalty for a violation of the law and, unlike restitution, is not remedial in nature," so a deduction was not permitted under any section of the tax code, including I.R.C. § 165(c)(2). J.A. 552. Nacchio's counsel appealed this decision within the IRS, but Nacchio was again denied a refund.

On January 10, 2012, Nacchio commenced this action before the Court of Federal Claims, seeking a credit of

$17,974,832[3] pursuant to I.R.C. § 1341.  Appellees and the United States agreed to litigate cross-motions for summary judgment prior to discovery.  The government argued that: (1) § 162(f) barred any deduction under either § 165 or § 162, and (2) even if the loss caused by the forfeiture was a deductible loss under § 165 or § 162, Nacchio was estopped from seeking the special tax relief authorized by § 1341 because his criminal conviction was conclusive with respect to his state of mind.  Nacchio argued that his loss was deductible under both § 165 and § 162 and that the question of whether it appeared that he had an unrestricted right to his trading profits in 2001 was not actually litigated in his criminal trial.

The Court of Federal Claims denied the government's motion for summary judgment and granted-in-part Nacchio's motion for partial summary judgment.  The court held that Nacchio's forfeiture payment was deductible under I.R.C. § 165.  *Nacchio*, 115 Fed. Cl. at 203.  First, it noted that the government did not dispute that Nacchio's forfeiture is a loss under § 165.  Second, it found that the public policy against insider trading did not prevent the deduction of the amount forfeited here.  Specifically, the court compared Nacchio's case to *Stephens* and reasoned that "[d]isallowing the deduction would result in a 'double sting' by requiring taxpayers to

---

[3]    When Appellees filed their amended return for the 2007 tax year, they erroneously calculated the amount of tax that they had previously paid on Mr. Nacchio's gain from his exercise of Qwest stock options (and sales of corresponding shares), by failing to deduct from the amount of Mr. Nacchio's gain $60,081.00 in brokerage fees. As a result, the amended return for the 2007 tax year claimed a refund of $17,999,030.00, when the correct amount was $17,974,832.00.  Appellee Br. 12 n.3.

both make restitution and pay taxes on income they did not retain." *Nacchio*, 115 Fed. Cl. at 202.

The court expressly rejected the government's argument that deduction of the forfeiture was barred by I.R.C. § 162(f), which prohibits deductions "for any fine or similar penalty paid to the government for the violation of any law." *Id.* The court's rationale was that, unlike the 19 million dollar fine, which was clearly punitive and was paid from assets unrelated to insider trading, the forfeiture "exclusively represented the disgorgement of Mr. Nacchio's illicit net gain from insider trading." *Id.* at 203. In addition, the court found that "Nacchio's forfeiture was used for a compensatory purpose" because, even if not characterized as restitution, the amounts paid ultimately were returned to victims of Nacchio's crimes through remission. *Id.* In a footnote, the court rejected Nacchio's attempt to deduct his forfeiture under § 162 as an "ordinary and necessary business expense." *Id.* at 203 n.7.

The court then rejected the government's argument that Nacchio was collaterally estopped from pursuing special relief under § 1341. Relying on *Culley*, the government argued that, because fraudulent intent is a necessary element of the crime of which Nacchio was convicted, Nacchio could not now argue that he lacked such intent, or that he somehow could have both subjectively believed he had an unrestricted right to the funds and fraudulently engaged in trades to obtain them. Nacchio contended that the precise issue arising under § 1341 was not presented to the jury. He also asserted that he had not had a full and fair opportunity to litigate the question of his intent because certain evidentiary rulings in the criminal action prevented him from doing so. On both of these grounds, Nacchio argued that collateral estoppel should not apply. The Court of Federal Claims agreed with Nacchio, finding that "[t]he precise issue of whether Mr. Nacchio himself subjectively believed he had an unrestricted right to the funds he received from

trading in 2001 was not adjudicated in the criminal proceeding." *Id.* at 204. The court concluded that the question of whether Nacchio acted with the mistaken belief required by § 1341 was a factual one to be decided at trial.

The government moved for reconsideration of the court's decision, but the court denied the motion. Rather than proceed to trial on the issue of Nacchio's subjective belief under § 1341, the government stipulated to the entry of a final judgment in favor of Nacchio, reserving its right to appeal the court's adverse rulings on the applicability of § 162(f) and estoppel. In the stipulation, Nacchio also reserved the right to appeal the Court of Federal Claims's determination that the forfeited funds were not deductible as a business expense under § 162.

The government appealed and Nacchio cross-appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the Court of Federal Claims's grant of Nacchio's motion for partial summary judgment *de novo*. *Culley*, 222 F.3d at 1333. Whether Nacchio is entitled to an income tax deduction for the amount he forfeited to the government as part of his sentence for insider trading is a question of law, reviewable *de novo*. The question presented is, in essence, whether Nacchio must forfeit his insider trading gains to the government using after-tax dollars.

## A. I.R.C. § 165(c)(2)

To begin with, it is questionable whether § 165(c)(2) is even applicable where, as here, the "loss" sustained arose from a mandatory forfeiture of profit pursuant to a criminal conviction. Instead, the "losses" that § 165(c)(2) generally seems to contemplate are losses in the value of assets purchased for investment that failed to bear fruit.

*See, e.g.*, *Nathel v. Comm'r*, 615 F.3d 83, 94 (2d Cir. 2010) (involving deductibility of capital contributions allegedly made to obtain releases from loan guarantees); *Chen v. Comm'r*, No. 12982-12S, 2014 Tax Ct. Summary LEXIS 6, at *11 (T.C. 2014) (involving deductibility of allegedly abandoned investment property); *Seed v. Comm'r*, 52 T.C. 880, 884-85 (1969) (involving deductibility of financial contributions to an abandoned venture).

In any event, the government conceded before the Court of Federal Claims that Nacchio's forfeiture was a "loss" under § 165(c)(2), and we do not revisit that question on appeal. *Nacchio*, 115 Fed. Cl. at 201. Instead, the government argues that, despite being a "loss," the forfeiture is not deductible under § 165 because allowing the deduction would contravene public policy, as codified in § 162(f). The relevant question for resolving this appeal, accordingly, is whether Nacchio's criminal forfeiture is a "fine or similar penalty" under § 162(f), or if allowing a deduction in these circumstances would otherwise frustrate public policy.

We recognize that, as a general matter, we must use a flexible standard to "accommodate both the congressional intent to tax only net income, and the presumption against congressional intent to encourage violation of declared public policy." *Tank Truck Rentals*, 356 U.S. at 35. And "[i]ncome from a criminal enterprise is taxed at a rate no higher and no lower than income from more conventional sources." *Comm'r v. Tellier*, 383 U.S. 687, 691 (1966). We further understand Nacchio's argument that not being allowed to deduct his forfeited income from his taxes would result in a sort of "double sting": both giving up his ill-gotten gains and paying taxes on them. But in this case, the relevant statutes, regulations, and body of relevant case law lead us to conclude that Nacchio's criminal forfeiture must be paid with after-tax dollars, just as fines are paid with after-tax dollars. Specifically, as explained below, the government has

demonstrated that Nacchio's criminal forfeiture is a "fine or similar penalty" within the meaning of § 162(f).

First, the plain language of the statutory provision under which the amount Nacchio forfeited was calculated supports the view that Congress intended the forfeiture to be paid with after-tax dollars. The Tenth Circuit held on remand that Nacchio's forfeiture should be calculated in accordance with § 981(a)(2)(B), not § 981(a)(2)(A). *Nacchio*, 573 F.3d at 1090. Section 981(a)(2)(B) states that:

> [T]he term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. . . . The direct costs *shall not include* . . . any part of *the income taxes* paid by the entity.

18 U.S.C. § 981(a)(2)(B) (emphases added). Thus, the language of the statute suggests that—by design—the forfeiture amount does not account for taxes paid on the amount of money acquired through the illegal transactions.

Next, Treasury Regulation § 1.162-21(b)(1) defines "fine or similar penalty" for the purposes of § 162(f) as including, *inter alia*, "an amount—(i) Paid pursuant to conviction or a plea of guilty or *nolo contendere* for a crime (felony or misdemeanor) in a criminal proceeding." 26 C.F.R. § 1.162-21. In *Colt Industries, Inc. v. United States*, we looked to the Treasury Regulation's definition of a "fine or similar penalty" in denying deductions a taxpayer sought under § 162(a) for civil penalties it had paid to the state for violations of the Clean Water Act and the Clean Air Act. 880 F.2d 1311, 1313 (Fed. Cir. 1989) ("If there were any doubt about the meaning of the phrase 'fine or similar penalty', it is readily removed by reference to Treasury regulations promulgated in interpretation of the provision.").

Similarly, in this case, Nacchio's criminal forfeiture meets the definition of a "fine or similar penalty" under Treasury Regulation § 1.162-21(b)(1). Nacchio's criminal forfeiture was imposed pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as part of his sentence in a criminal case. Section 981(a)(1)(C), as amended by the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, § 20, 114 Stat. 202, 224, authorizes the forfeiture of "proceeds" traceable to numerous felony offenses, including any offense constituting "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7)(A). Section 1956(c)(7)(A), in turn, defines "specified unlawful activity" as any act or activity constituting an offense under 18 U.S.C. § 1961(1)(D), which includes "any offense involving . . . fraud in the sale of securities."

28 U.S.C. § 2461(c) requires forfeiture whenever a defendant in a criminal case "is convicted of the offense giving rise to the forfeiture," in which case the court "shall order the forfeiture of the property as part of the sentence in the criminal case." This forfeiture is mandatory when the relevant prerequisites are met. *See United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014) ("Notably, § 2461(c) (in conjunction with § 981) provides that the district court 'shall order' forfeiture in the amount of the criminal proceeds. As the Supreme Court remarked in a related context, 'Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied.'") (quoting *United States v. Monsanto*, 491 U.S. 600, 607 (1989)).

Though we have not considered the precise question posed here, other courts of appeals have done so, repeatedly concluding that forfeitures of property to the government similar to the one at issue are not deductible because they are punitive. *See King v. United States*, 152 F.3d 1200, 1202 (9th Cir. 1998) ("on this matter of national tax policy there is something to be said for uniformity

among the circuits"). For example, in *Wood*, the Fifth
Circuit denied a loss deduction under § 165 for the civil
forfeiture of proceeds from the taxpayer's drug trafficking
activities. 863 F.2d at 418. The appellant pled guilty to a
criminal offense, conspiracy to import marijuana and
importation of marijuana, and was sentenced to serve
four years in prison and pay a $30,000 fine. *Id.* The
appellant argued, *inter alia*, that, because he already paid
his criminal debt by means of imprisonment and the
$30,000 fine, he should not have to pay taxes on proceeds
he forfeited to the government. *Id.* at 421. The court,
nevertheless, found that his drug proceeds were taxable
income and that "[f]orfeiture cannot seriously be consid-
ered anything other than an economic penalty for drug
trafficking." *Id.* *See also Fuller v. Comm'r*, 213 F.2d 102,
105-06 (10th Cir. 1954) (disallowing business loss deduc-
tion under the precursor of § 165 for the cost of whiskey
confiscated by law enforcement agencies of a "dry" state);
*King*, 152 F.3d at 1201-02 (no loss deduction under
§ 165(a) for voluntary disclosure and forfeiture of hidden
drug trafficking profits).

In non-tax cases, our sister courts of appeals have
confirmed that, while restitution is compensatory, crimi-
nal forfeiture under § 2461(c) serves a distinct, punitive
purpose. The Eleventh Circuit held in *United States v.
Joseph* that a convicted criminal could not offset his
restitution by the amount he forfeited under 18 U.S.C.
§ 981 and 28 U.S.C. § 2461. 743 F.3d 1350, 1354 (11th
Cir. 2014). The court held that, "[w]hile restitution seeks
to make victims whole by reimbursing them for their
losses, forfeiture is meant to punish the defendant by
transferring his ill-gotten gains to the United States
Department of Justice (DOJ)." *Id.* In *Blackman*, the
Fourth Circuit reversed the trial court's ruling that it did
not need to order criminal forfeiture under 28 U.S.C.
§ 2461(c) when it had ordered restitution in the same
amount for a different offense than the one at issue in the

case. In so doing, the court stated that, restitution and forfeiture serve "distinct purposes: restitution functions to compensate the victim, whereas forfeiture acts to punish the wrongdoer." *Blackman*, 746 F.3d at 143.

In *United States v. Venturella*, defendants who were convicted of mail fraud argued that "imposing restitution and forfeiture for the same crime is an improper double payment, which constitutes double jeopardy." 585 F.3d 1013, 1019 (7th Cir. 2009). The Seventh Circuit disagreed, stating that "forfeiture seeks to punish a defendant for his ill-gotten gains by transferring those gains . . . to the United States Department of Justice . . . while restitution seeks to make the victim whole." *Id.* at 1019-20 (quoting *United States v. Emerson*, 128 F.3d 557, 567 (7th Cir. 1997) (internal quotation marks omitted)); *see also United States v. Taylor*, 582 F.3d 558, 567 (5th Cir. 2009) ("Courts have also declined to offset restitution based on the distinct purposes served by restitution and forfeiture.").

Like the trial court, Nacchio cites to *Stephens* to argue that not all payments ordered by a court pursuant to a criminal conviction are non-deductible losses. The taxpayer in *Stephens*, like Nacchio, was convicted of white collar crimes. At sentencing, the prosecutor recommended that Stephens pay restitution to the company whose funds he had embezzled. *Stephens*, 905 F.2d at 668. Stephens was then sentenced to several years in prison and fines, but part of the prison term was suspended "on the condition that he make restitution to Raytheon" in the amount he embezzled plus interest. *Id.* The Second Circuit held that the restitution was "a remedial measure to compensate another party, not a 'fine or similar penalty.'" *Id.* at 672-73. It thus found the restitution deductible under § 165.

*Stephens* is distinguishable. Unlike Nacchio's case, the *Stephens* case involved court-ordered restitution—

imposed as a condition of his partially suspended sentence—which was clearly remedial, as it restored the embezzled funds to the injured party. The court noted that the payment was so "Raytheon [would] get its money back" and that "Stephens' payment was made to Raytheon and not 'to a government.'" *Id.* at 673. Thus, allowing the restitution to be deducted comported with those cases explaining the difference between restitution orders and forfeiture orders. In Nacchio's case, by contrast, forfeiture, not restitution, is at issue. The court's amended judgment specifically provided that the amount of restitution owed was "$0.00" and that restitution was "not applicable." J.A. 143, 148. At the resentencing hearing, the district court judge described Nacchio's sentence of imprisonment, fine, and disgorgement as "three forms of penalty." J.A. 486. The judge further found that "the goal of restitution, sadly [ ] is not applicable here" because "there is no provision in the law for restitution." *Id.* Instead, the district court directed that the fine of 19 million dollars "be deposited to the Crime Victims' Fund" to "help fund state and local victims' assistance programs[,] . . . And the forfeiture money can be used to assist victims *within limitations* under the law." *Id.* (emphasis added).

Nacchio clings to this last point—the fact that the forfeited funds made their way to the victims of the crimes. He argues that the remission process by which the funds were distributed to the victims is governed by the Civil Asset Forfeiture Reform Act of 2000, which has a compensatory purpose: to restore forfeited assets to victims of the offense giving rise to the forfeiture. He also points out that the remission payments were made to identifiable persons who would have a civil cause of action against Mr. Nacchio to recover those funds. He insists that the forfeiture was tantamount to restitution.

The Attorney General's post-hoc decision to use the forfeited funds for remission did not transform the char-

acter of the forfeiture so that it was no longer a "fine or similar penalty" under § 162(f). The decision to use the forfeited funds to compensate the victims was discretionary. Section 981(e) authorizes the Attorney General to "retain property forfeited pursuant to this section, *or* to transfer such property on such terms and conditions as he *may* determine" "(6) as restoration to any victim of the offense giving rise to the forfeiture." 18 U.S.C. § 981 (emphases added). In addition, 21 U.S.C. § 853(i), which describes criminal forfeiture procedures applicable to § 2461(c), empowers the Attorney General to "grant petitions for . . . remission of forfeiture . . . *or* take *any other action* to protect the rights of innocent persons" with respect to forfeited property. 21 U.S.C. § 853(i) (emphases added).

Consistent with these statutes, the prosecutor stated at resentencing that the decision as to whether Nacchio's forfeiture would be used to compensate victims would be made by the AFMLS in Washington. J.A. 494-95. The Attorney General has delegated the authority to grant petitions for remission to the Chief of the AFMLS. J.A. 252.

Allowing Nacchio to deduct his forfeiture because the AFMLS decided to distribute it to victims through remission would mean that whether two people convicted of the same crimes could deduct their criminal forfeiture would turn not on their actions, or the statutes governing their sentencings, but on the after-the-fact discretionary decisions of a third party. This is not the law. Instead, "[t]he characterization of a payment for purposes of § 162(f) turns on the origin of the liability giving rise to it." *Bailey v. Comm'r*, 756 F.2d 44, 47 (6th Cir. 1985) (citing *Middle Atl. Distribs. v. Comm'r*, 72 T.C. 1136, 1145 (1979); *Uhlenbrock v. Comm'r*, 67 T.C. 818, 823 (1977)). We think Congress could not have intended to create a scheme in which the applicability of § 162(f) would depend upon how

the government, in its discretion, later decided to use the funds generated by a fine or similar penalty.

Second, although the forfeited funds wended their way to Nacchio's victims, the forfeited amount is unrelated to the amount of losses suffered by the victims. While Nacchio forfeited his criminal "proceeds"—about 44 million dollars—the victims claim to have suffered almost 12 billion dollars in cumulative losses. J.A. 513. Though not dispositive, the fact that Nacchio's forfeiture was pegged to his profits and not to the victims' losses weighs against a conclusion that Nacchio's forfeiture was restitution to those victims. Nacchio cites *Fresenius Medical Care Holdings, Inc. v. United States*, 763 F.3d 64 (1st Cir. 2014), for the proposition that this court must look to the "economic reality," rather than the form, of the particular transaction at issue when deciding proper tax treatment. Here, the economic reality is that Nacchio was punished through forfeiture, not that Nacchio's victims were fully compensated. Even when a fine subsequently is applied as restitution, deduction of the fine is disallowed. *Bailey*, 756 F.2d at 47.

For all of these reasons, we hold that the trial court erred in ruling that Nacchio may deduct his forfeiture under § 165.

## B.  I.R.C. § 162(a)

We briefly address Nacchio's cross-appeal, in which he argues that the Court of Federal Claims erred in holding that the forfeited funds are not deductible under I.R.C. § 162. *Nacchio*, 115 Fed. Cl. at 203 n.7. It is necessary to address this cross-appeal in light of our holding of non-deductibility under § 165 because Nacchio contends that § 162 provides an alternative basis for him to deduct the

forfeiture.[4]  Section 162(a) allows "as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Nacchio argues that his criminal forfeiture was an "ordinary and necessary expense paid or incurred in carrying on his trade or business" because he was required to forfeit funds that Qwest, through the mechanism of options, had given to him as compensation in the course of his employment as Qwest's CEO.

Because § 162(f) also applies to loss deductions under § 162(a), we affirm the trial court's ruling that Nacchio cannot deduct his forfeiture under § 162 for the reasons articulated in Section A. above.

## C.  I.R.C. § 165(c)(1)

Nacchio also argues that the Court of Federal Claims did not specify in its holding whether the deduction was allowed under § 165(c)(2) or § 165(c)(1).  Therefore, Nacchio argues, for the first time on appeal, that his forfeiture payment is deductible under *either* provision. Thus, his position is that the forfeiture is alternatively deductible under § 165(c)(1) as a "loss" incurred in a "trade or business."  We generally do not consider issues that were not clearly raised in the proceeding below. *Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1369 (Fed. Cir. 2015) (citing *Hormel v. Helvering*, 312 U.S. 552, 556 (1941) and *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1354-55 (Fed. Cir. 2011)). We think it is clear that the Court of Federal Claims only considered deductibility under (c)(2) and not (c)(1) of

---

[4]  Because Nacchio's argument is really one that urges an alternative ground in support of the trial court's judgment, that argument is not properly raised as a cross-appeal.  No matter the procedural posture, we conclude that the argument is not well taken.

§ 165.  *See Nacchio*, 115 Fed. Cl. at 201.  In any event, Nacchio's new argument is meritless.  Nacchio's forfeiture is not deductible under either provision of § 165(c) because it is a fine or similar penalty.

CONCLUSION

For the foregoing reasons, we reverse the trial court's holding that Nacchio may deduct his forfeiture as a loss under § 165 and affirm its holding that Nacchio may not deduct his forfeiture as a loss under § 162.  Because the parties do not dispute that deductibility under another provision of the tax code is a prerequisite to deductibility under § 1341, we further hold that Nacchio also may not seek special tax relief under § 1341.  We, thus, do not reach the government's contention that Nacchio is estopped by his criminal conviction from seeking tax relief under § 1341.  We affirm-in-part, reverse-in-part, and remand for entry of judgment in favor of the government.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

COSTS

Each side to bear their own costs.